ARMIJO *v.* BOARD OF COUNTY COM'RS OF BERNALILLO CO.

January Term, 1885.

1. COUNTY COMMISSIONERS—DEFAULTING SHERIFF—JURISDICTION.

A board of county commissioners, in considering the case of a defaulting sheriff, with a view to declaring his office vacant in case the default is proved, act in a *quasi* judicial capacity. They are a board of special and inferior jurisdiction, and there is no presumption arising in their favor as to the regularity of their proceedings. Their jurisdiction, therefore, must be made to appear upon the record of said proceedings, and evidence of it cannot be sought *aliunde.*

2. SAME—CERTIFICATE OF COUNTY CLERK OR TERRITORIAL AUDITOR.

In such proceedings, under Act N. M. March 1, 1882, § 3, a certificate of the default, by the county clerk or territorial auditor, is essential to jurisdiction, and the commissioners cannot proceed without it.

3. SAME—CERTIORARI—WHAT THE WRIT BRINGS UP.

The common-law writ of *certiorari* to review a summary conviction under a penal statute brings up not only questions affecting the jurisdiction of the magistrate, but whether there was sufficient evidence to warrant a conviction of the party accused; and in such case the evidence must appear on the face of the record, or the conviction will be quashed.

*Certiorari.* Appeal from Second district court, Bernalillo county.

*Neill B. Field* and *Childers & Fergusson,* for petitioner and appellee.

*Stone & Stone,* for respondents and appellants.

BY THE COURT. This case is affirmed for the reasons given in the opinion of the learned judge before whom the case was tried in the court below.

---

(*Opinion of Lower Court.*)

BELL, J. This is a *certiorari* granted by the district court for the county of Bernalillo, and directed to the board of county commissioners of the said county. The writ was granted upon the petition of the relator, setting forth that at a special session of the board of county commissioners of the county of Bernalillo, held on the twenty-first of February, 1884, the following proceedings were had: That the report of the clerk of the said board of county commissioners was filed, by which said report it was pretended to be shown and certified by the said clerk that he, the said Perfecto Armijo, then and there being the sheriff and *ex officio* collector of the said county, was indebted to the said county in the sum of $5,509.94; that thereupon the said report was pretended to be approved by the said board of county commissioners as submitted, and that the said board of commissioners attempted to pass and did pass a resolution declaring the offices of the relator as such sheriff and *ex officio* collector to be vacant. The petitioner then charges that under the law the said county commissioners had no sufficient showing before them to justify the removal of the petitioner from his said offices. The petition also sets forth other matters, but it is not necessary to recite them here.

Upon this petition the writ was issued, requiring the said board of commissioners to transmit to this court, for its examination and review, all original papers, and a full and complete transcript of all the proceedings, in the matter of the removal or attempted removal of the relator from his offices of sheriff

and *ex officio* collector of the county of Bernalillo, and in the matter of declaring the said offices vacant.

To this writ the board of commissioners made a return, showing certain proceedings of the board upon August 6, 1883, by which it appears that, at a meeting of the board on that day, certain persons, who had been appointed by the board as accountants, at a prior session, to examine into and report upon the accounts of the various county officials, made their report, and that the clerk was instructed to give notice to the collector to proceed at once and collect certain outstanding licenses and certain taxes. That afterwards, and on third day of September, the board held another meeting, at which the following proceedings were had: "The report of J. W. Barton and Charles F. Pierce, the experts appointed to examine into the condition of the accounts of the various county officials, was called for and presented, and after due consideration, on motion of W. E. Talbott, it was ordered that the report and statement be received and published in the *Morning Journal*, of Albuquerque. Perfecto Armijo, sheriff and collector, appeared, as per order of the prior meeting, and submitted his accounts, with the statement that he could explain and account for the differences between the same and the statement of the accountants. After due investigation it was unanimously ordered that the clerk be instructed to spread the following orders on the records, and furnish copies of the same to the parties interested.

"Upon an investigation of the accounts of the county officers, ordered to be made by the board of county commissioners, at the regular meeting, held on the seventh day of July, A. D. 1883,—said investigation having been made under such order, and a report made in pursuance therewith on the third of September, A. D. 1883, as ordered; and also a report having been made by Perfecto Armijo, sheriff of Bernalillo county, New Mexico; also by Charles W. Lewis, treasurer of said county,—it appears by said reports that Perfecto Armijo, sheriff as aforesaid, is indebted to the said county of Bernalillo as follows, to-wit:

| | | |
|---|---|---:|
| To the county fund, | - - - | $3,589 96 |
| To the school fund, | - - - - - - | 746 90 |
| | | |
| Total indebtedness of sheriff, | - - - | $4,336 86 |

"And it is therefore ordered that the said Perfecto Armijo, sheriff as aforesaid, be, and he is hereby, ordered to make his accounts good, and settle said indebtedness, on or before the first Monday in October, A. D. 1883, and the clerk of said board is hereby required to notify him of said order."

The return further shows that on the twenty-first day of January, 1884, a meeting of the board was held, at which the following proceedings were had, to-wit: "On motion of J. R. Armijo, seconded by W. E. Talbott, J. W. Barton and C. F. Pierce were sworn to the correctness of the accounts of the various county officers, as examined and reported by them to this board September 3, 1883. On motion of J. R. Armijo, seconded by Ortiz, it was ordered that a statement of the collector's accounts with the county be forwarded to the governor; the vote on the same standing, J. R. Armijo and Antonio Ortiz in the affirmative, and W. E. Talbott in the negative; whereupon the collector asked that an extension of time be granted in order to allow him to compare accounts with the clerk; and upon motion of Antonio Ortiz the vote was reconsidered, and time of forwarding of statement extended to the next regular session."

The return does not show when the next regular session was to be held, but the proceedings of the session of January 21, which appears to have been a special session, are followed in the return by the proceedings of a special session held February 19, 1884, at which the following proceedings were had, to-wit:

"The collector presented his report for the consideration of the board. On account of the absence of the county attorney, a motion was made by J. R. Armijo to place the report on file until the next meeting, which was seconded by Ortiz, and carried."

The return then continues as follows:

"Special session, February 21, 1884. Session opened in due form. Present: J. R. Armijo, president; Antonio Ortiz and William E. Talbott, commissioners; Perfecto Armijo, by Henry Richmond, deputy. The report of the clerk of the collector's accounts, as filed by him, and as shown by the clerk's records, was called for and submitted, showing the said collector to be indebted to Bernalillo county in the sum of $5,509.94, after deducting all delinquent taxes, as claimed by him. The report was approved as submitted. A motion was made by J. R. Armijo, and seconded by Ortiz, that the offices of collector and sheriff be declared vacant; J. R. Armijo and Antonio Ortiz voting in favor of the motion, and W. E. Talbott voting against. A motion of Francisco Armijo y Otero to extend time to the sheriff to present his explanations was carried; Talbott and Ortiz voting in favor, and J. R. Armijo voting against. A motion of J. R. Armijo to adjourn *sine die* was carried unanimously.

[Sgd.]                                        "J. R. ARMIJO,
                                                   "ANTONIO ORTIZ."

To these proceedings, or rather to the record of these proceedings, a certificate of the clerk of the board of commissioners is attached. On behalf of the relator a motion was filed to quash the proceedings set out in the return, for the following reasons: "*First.* Because it does not appear from the said return that the said board of county commissioners had jurisdiction of the subject-matter in controversy in said proceedings mentioned. *Second.* Because it does not appear from the said return that said board had jurisdiction of the person of the petitioner, against whom the said proceedings were had. *Third.* Because it does not appear from the said return that the said board had any evidence before them upon which to base the judgment attempted to be rendered by them in the said cause."

The first question raised upon the motion is as to the jurisdiction of the county commissioners to act in the premises. The only provision of law authorizing the board of county commissioners to remove the *ex officio* collector of the county is section 3 of the act of the legislative assembly of the territory of New Mexico, approved March 1, 1882, which provides as follows:

"Whenever any county collector shall fail to pay into the county or territorial treasury any moneys in his hands due the county or territory respectively, at the time prescribed by law, and such default continues for thirty days after the time so prescribed, he shall, in addition to other penalties, forfeit his office, and be deemed a public defaulter; and the county commissioners, immediately upon the receipt of a certificate of such default, under the hand and seal of the clerk or territorial auditor, shall declare said office vacant, and fill such vacancy by appointment."

There can be no doubt that the action authorized by this section of the law is summary and penal in its character, and in derogation of the common law. In such cases it is well settled that, in order to justify such action as is authorized, a strict compliance with the provisions of the statute must be made before action is warranted.

The authorities on this subject are uniform, and the principle is fairly stated in the case of *Owens* v. *Andrew Co.* 49 Mo. 379, where the court says: "It is a principle of universal recognition that all statutory provisions authorizing proceedings of a summary character, and contrary to the course of the common law, are to be strictly construed." The board of commissioners in this case undoubtedly acted in a *quasi* judicial capacity. They are a board of special and inferior jurisdiction, and there is no presumption arising in their

favor as to the regularity of their proceedings. Their jurisdiction must therefore be made to appear upon the record of said proceedings, and evidence of it cannot be sought *aliunde*. Upon this subject the court of appeals of New York, in an elaborately considered case, says: "Inferior magistrates, when required by writ of *certiorari* to return their proceedings, must show affirmatively that they had authority to act; and whereas, in the present case, their authority and jurisdiction depend upon a fact to be proved before themselves, and such fact be disputed, the magistrate must certify the proofs given in relation to it, for the purpose of enabling the higher court to determine whether the fact be established. The decision of the magistrate in relation to all other facts is conclusive and final, and will not be reviewed on a common-law writ of *certiorari;* but the main object of this writ being to confine the action of inferior officers within the limits of their delegated powers, the reviewing court re-examines, if required, the decision of the magistrate on all questions on which his jurisdiction depends, whether of law or of fact." *People* v. *Goodwin*, 5 N. Y. 568. That case arose under a statute of New York, by which the commissioners of highways were empowered, under certain circumstances, to lay out and open roads, but were prohibited from opening a road through any building without the consent of the owner. The question was whether the court could, upon a common-law writ of *certiorari*, review the evidence, under an issue in the case, as to whether the consent of the owner had in fact been obtained; and it was held that as this was a jurisdictional fact, the existence of which was absolutely essential to give any validity to the proceedings of the commissioners, the evidence in relation to it was properly returned, and entitled to be considered.

In the case at bar, the board of county commissioners were authorized to act "whenever any county collector shall fail to pay into the county or territorial treasury any moneys in his hands due the county or territory, respectively, at the time prescribed by law, and such default continue thirty days after the time so prescribed, * * * immediately upon the receipt of a certificate of such default under the hand and seal of the clerk or territorial auditor. * * *" No such certificate appears in the return of the proceedings of the board. It is entirely clear that the very foundation of their jurisdiction would necessarily be such a certificate as is prescribed by the statute quoted. Without it, they would have absolutely no jurisdiction to act. The recital in the record of their proceedings of the twenty-first February, 1884, when the action complained of was taken, shows neither such a certificate of record, nor is there any allusion whatever to the receipt of such a certificate. It is claimed by counsel for the board that the recital in those proceedings, as follows: "The report of the clerk on the collector's accounts, as filed by him and as shown by the clerk's records, was called for and submitted, showing the said collector to be indebted to Bernalillo county in the sum of $5,509.94, after deducting all delinquent taxes as claimed by him,"—is a sufficient compliance with the provisions of section 3 of the statute. This view of the law is hardly worth consideration. It is sufficient to say that the recital does not even pretend to recite such facts as the statute requires shall appear in the certificate of the clerk to be returned to them; but even if it did, the failure to return the certificate required by the statute necessary to show the jurisdiction of the board to act, would be fatal to the proceedings.

"It is well settled that the common-law writ of *certiorari* to review a summary conviction under a penal statute, brings up not only questions affecting the jurisdiction of the magistrate, but also the question whether there was any evidence to warrant the conviction, and in such cases the evidence must appear on the face of the record, or the conviction will be quashed." *Mullins* v. *People*, 24 N. Y. 399; *People* v. *Sanders*, 3 Hun, 16.

The case of *McGregor* v. *Board Sup'rs Gladwin Co.* 37 Mich. 388, was one

very analogous to the case at bar. That was the case of a *certiorari* to the board of supervisors to review their proceedings, by which they declared the office of the relator, McGregor, to be vacant, because of his failure to file a new and additional bond, as he was required by them to do. The court says:

"It appears from the records which have been sent up here, in response to the writ of *certiorari*, that the plaintiff had filed his official bond, which was approved by the board, but that subsequently a new bond was required of him, and that he was given until June 26, 1877, to file it. On the day last mentioned the time for filing it was extended to July 17th. The board was in session July 17th, and on motion of one of its members a resolution was unanimously adopted, declaring the office of county treasurer vacant. The record does not show that plaintiff in error was present at this meeting, or that he was notified thereof, or notified that any action against him was proposed. A writ of *certiorari* having been sued out and certified, the board returned that the new bond was demanded because it was found that the sureties in the first were not responsible. They also return that the plaintiff in error was notified of the demand, and appeared before the board and stated that he would give the bond required, if he could procure sureties, but that he failed so to do, and stated that he was unable; whereupon the board proceeded to remove him. The sufficiency of this return as an answer to the writ is the question before us. My brethren think that before the board could proceed to a removal, it should have appeared from their own records that all the facts existed which would authorize the board to take action. This would involve some finding or resolution that the existing bond was insufficient, the requirement of a new bond, notification of the defendant of the fact, a failure on his part to comply, and proceedings subsequently for his removal, of which he should have notice, and an opportunity to make defense. They also think that the deficiencies in the record in this regard cannot be supplied by the return to the writ of *certiorari*. Removal from a public office is a matter of serious consequence, and it is plain that all the facts which would justify it ought properly to be of record, and my brethren think it essential."

I quote thus fully from the Michigan case, not only because of its strong analogy upon the facts otherwise to this case, but also because in this case it is claimed that the certificate of the county clerk, attached to the return of the proceedings, set forth in effect that the board of county commissioners, at their meeting on February 21, 1884, were in receipt "of a certificate under the hand and seal of the clerk, as provided by section 3 of the act of 1882," and that this amounted in effect to the certificate required by law to be before them. This certificate of the clerk, as in the Michigan case, is no part of the record, and cannot be considered as part of the proceedings which are to be reviewed in this court. It in no way cures the defect in the record itself of the proceedings; nor does the record in this case show either that the defendant was present at the meeting when the action complained of was taken against him, or that he had any notice of such meeting, or intention on the part of the board of commissioners I am of opinion that he was entitled to such notice, and entitled to be heard, before the board would be authorized to act; otherwise, I am of opinion that the statute under which authority to act is claimed, would be null and void, as no person should be deprived of such rights as he had in his office without being given his "day in court."

It follows from these views that the motion to quash the proceedings of the board of county commissioners must be granted; and it is so ordered.