(110 App. Div. 423.)

## PEOPLE v. HOFFHEIMER.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

TRADE-MARKS AND TRADE-NAMES—INFRINGEMENT—STATUTES—APPLICATION.

     Pen. Code, § 364, subd. 6, provides that a person who knowingly sells, or exposes for sale, any goods represented to be the manufacture of any person or corporation other than himself, unless such goods are contained in the original packages, and under the labels, marks, or names placed therein by the manufacturer entitled to use them, is guilty of a misdemeanor. *Held*, that such section does not apply to a sale of a couch by a salesman who stated to the purchaser that the covering thereon was pantasote, where as a matter of fact it was not the genuine pantasote which was manufactured under a trade-mark; but the intent of the statute is to protect the owners of trade-marks by making it a crime to sell goods covered by a trade-mark owned by another, unless sold in the package in which they were put up by the manufacturer, with his labels constituting the trade-mark attached thereto.

Appeal from Court of Special Sessions of City of New York.

Charles Hoffheimer was convicted of violating Pen. Code, § 364, subd. 6, prohibiting the sale of goods represented to be manufactured by any firm or corporation, unless the goods are contained in the original packages under the labels, marks, or names placed thereon by the manufacturer, etc., and he appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

William O. Campbell, for appellant.

Robert S. Johnstone, for the People.

LAUGHLIN, J. The defendant was a salesman in the employ of Spear & Co., who conducted a furniture store at No. 253 Sixth avenue in the city of New York. On the 12th day of December, 1904, he sold a lounge, the covering of which he represented to be pantasote. Pantasote is a leather substitute manufactured by the Pantasote Leather Company, a corporation organized in 1890. The word "Pantasote" is registered as a trade-mark and is marked on the selvage of all goods manufactured by the company. It appears that no other company manufactures goods under that name, although there are many imitations of its goods in use. It was not shown that the Pantasote Leather Company manufactured the couch or lounge, or

manufactures any thing other than pantasote. It is manifest that the pantasote could not remain in the original package in which it was put up by the manufacturer, and at the same time be used in the manufacture of couches. This was self-evident, and no one could be deceived concerning it. It does not definitely appear how closely the material with which the couch was covered resembled pantasote, but the difference was described by the witnesses as consisting of a difference in the grain and odor. It was not shown that the defendant knew that pantasote was manufactured by the Pantasote Leather Company or under a trade-mark; nor was it shown that he knew that the couch was not covered with genuine pantasote, or how to determine the material known as pantasote. It does not appear whether or not the goods he represented as pantasote had any or what trade-mark stamped on the selvage. He testified that he did not know that the couch was not covered with pantasote, and that he knew that it was pantasote. He evidently meant by this that it was known to him as pantasote, for he testifies that he had been selling pantasote for 10 or 12 years. It does appear from his evidence that he understood that the couch was covered with imitation leather which was known to him and the other salesmen as pantasote, but whether or not it was the real pantasote, or pantasote was its proper name, he could not tell.

Section 364, subd. 6, of the Penal Code, entitled "Offenses against Trade Marks," provides that:

"A person who knowingly sells, offers or exposes for sale, any goods which are represented in any manner, by word or deed, to be the manufacture or product of any person, firm or corporation, other than himself, unless such goods are contained in the original packages and under the labels, marks or names placed thereon by the manufacturer who is entitled to use such marks, names, brands or trade marks  *  *  *  is guilty of a misdemeanor."

The information charged the defendant with violating the provisions of the statute quoted, and he has been found guilty thereof on the evidence the substance of which has been stated. If the statute had any application to such goods after being used in the manufacture of a couch or other article, it is quite clear, we think, that it was incumbent on the prosecution to show that the defendant knew that the goods he represented to be pantasote were not pantasote. Surely every salesman is not chargeable with knowledge of every patent or trade-mark; nor can it be that the Legislature intended that a salesman, who is informed that goods are known by a certain name, and innocently sells them as such, is guilty of a crime, if it appears that the manufacturer of the goods thus sold was not authorized to use the name in connection therewith.

But we are of opinion that the statute has no application to the state of facts shown by the prosecution. The purpose of the statute evidently was to protect the owners of trade-marks by making it a crime to sell or offer or expose for sale goods covered by a trade-mark owned by another unless the goods when sold or offered or exposed for sale were contained in the package in which they were put up by the manufacturer and had thereon the labels, marks, or names constituting the trade-mark by which the manufacturer desired the goods to be known and introduced. It needs no argument to show

that, if this be the true construction of the statute, no violation thereof has been shown.

It follows, therefore, that the conviction was erroneous, and the judgment should be reversed, and the defendant discharged. All concur.