THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN H. LUHRS, Appellant.

Offenses against trade marks — constitutionality of statute prohibiting violation of trade marks.

The Penal Code (§ 364, subd. 6), as it was prior to the amendments of 1908, prohibits the sale of goods protected by a lawful trade mark, which are represented to be the manufacture of another, unless they are contained in the original package and under the label placed thereon by the manufacturer. It prohibits the sale of goods represented to have been made by the owner of a trade mark, except as contained in the original package and as put up by him under his label. The protection extends to the bottling of a liquid as well as the making thereof.

The object of the statute is to prevent fraud and is a proper exercise of the police power of the state. It does not deprive the owner of his property, but prohibits him from so using it as to deceive others and invades no constitutional right.

*People* v. *Luhrs*, 127 App. Div. 634, affirmed.

(Submitted May 6, 1909; decided May 20, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 8, 1908, which affirmed a judgment of the Court of Special Sessions of the Peace in the city of New York convicting the defendant of a violation of section 364 of the Penal Code.

An information filed by the district attorney of the county

of New York charged the defendant with violating section 364 of the Penal Code, known as the Trade Mark Law. After a trial before three justices of the Court of Special Sessions he was convicted and sentenced to pay a fine of fifty dollars, and, in default of payment, to imprisonment for twenty days. He paid the fine under protest and appealed to the Appellate Division where the judgment of conviction was affirmed, two of the justices dissenting. He then appealed to the Court of Appeals.

Upon the trial it was admitted that a corporation known as the Wilson Distilling Company used a trade mark to indicate that it was the manufacturer and producer of whisky, " placed and contained in," a certain bottle in evidence, " by the said corporation;" that the trade mark affixed to said bottle was lawfully adopted by the company "and usually affixed to bottles of whisky manufactured and produced by the said corporation to denote that the same was manufactured and produced by the said corporation."

Evidence was given tending to show that the defendant, a barkeeper in a certain saloon in the borough of Manhattan, repeatedly refilled the bottle in question from a demijohn kept beneath the bar after the original contents placed in said bottle by the Wilson Distilling Company had been disposed of, and sold the whisky thus substituted upon the representation that it was the product of and had been bottled by said corporation, although he knew that it had not been placed in said bottle by that company. It did not appear " whether the whisky with which he refilled the bottle was Wilson whisky or not."

*Louis Lowenstein* and *Francis William Russell* for appellant. Section 364 of the Penal Code, as amended, violates article 1, sections 1 and 6, of the Constitution of the state of New York, and the fourteenth amendment to the Constitution of the United States, and is, therefore, unconstitutional. (*Wynehamer* v. *People,* 13 N. Y. 378; *Wright* v. *Hart,* 182 N. Y. 330; *People* v. *Abell,* 182 N. Y. 424; *Matter of*

*Jacobs,* 98 N. Y. 105; *People* v. *Marx,* 35 Hun, 528; 99 N. Y. 377; *People ex rel. Appel* v. *Zimmerman,* 102 App. Div. 105; *People* v. *Gillson,* 109 N. Y. 389; *People ex rel. Tyroler* v. *Warden, etc.,* 157 N. Y. 116; *People* v. *Otis,* 90 N. Y. 48; *People ex rel. Madden* v. *Dycker,* 72 App. Div. 308.) Assuming that the statute may be maintained for all proper purposes by giving it the construction that it is a fraudulent sale only which is prohibited, then the People utterly failed to make out a case. (*People* v. *Draper,* 15 N. Y. 573; Bishop on Stat. Crimes, § 93; *Clark* v. *Clark,* 25 Barb. 79; *Coal* v. *M. T. Co.,* 149 U. S. 562; *People* v. *Hilfman,* 61 App. Div. 542; *Hostetter Co.* v. *Cramerford,* 97 Fed. Rep. 585; *Rau* v. *People,* 63 N. Y. 277; *Matter of Gulliman,* 41 Misc. Rep. 94; *Blatz* v. *Rohrbach,* 116 N. Y. 452; *U. S.* v. *Doncournau,* 54 Fed. Rep. 138.)

*William Travers Jerome, District Attorney* (*Robert S. Johnstone* of counsel), for respondent. The provision of the statute under consideration is a valid exercise of the police power of the state. (*Wright* v. *Hart,* 182 N. Y. 330; *People* v. *Ewer,* 141 N. Y. 129; *People ex rel. Nechamcus* v. *Warden,* 144 N. Y. 529; *People ex rel. Armstrong* v. *Warden,* 183 N. Y. 223; *Holden* v. *Hardy,* 169 U. S. 366; *Lemieux* v. *Young,* 211 U. S. 489; *Mugler* v. *Kansas,* 123 U. S. 623; *L'Hote* v. *New Orleans,* 177 U. S. 587; *Jacobson* v. *Massachusetts,* 197 U. S. 11; *Johnston* v. *Fargo,* 184 N. Y. 379.) The provision of the statute under consideration is not susceptible of the construction that it relates only to the sale of or offer to sell "spurious" goods as those of a particular manufacturer. (2 Suth. on Stat. Const. [2d ed.] 700; 12 Abbott's Cyc. Dig. 190, 192; *People ex rel. Smith* v. *Gilon,* 66 App. Div. 25; *Tompkins* v. *Hunter,* 149 N. Y. 117; *People* v. *Marx,* 99 N. Y. 377; *Pierson* v. *People,* 79 N. Y. 424; *L. S. & M. S. Ry. Co.* v. *Roach,* 80 N. Y. 339; *People* v. *B. F. Co.,* 164 N. Y. 93; *People ex rel. Brown* v. *Woodruff,* 32 N. Y. 355; *Hier* v. *Abrahams,* 82 N. Y. 519; *People* v. *Bowen,* 182 N. Y. 1; *People* v. *Abeel,* 182 N. Y. 415.)

VANN, J. The intention of the legislature to thoroughly protect both the public and the owner from the furtive use of trade marks in any way is shown by the language of section 364 of the Penal Code under which the defendant was convicted. The first five subdivisions of that section, entitled " Offenses against trade marks," make it a crime to knowingly counterfeit a trade mark ; to use a false or counterfeit trade mark, or even a genuine trade mark without the owner's consent; to sell or keep for sale an article of merchandise to which is attached a false or counterfeit trade mark or a genuine trade mark without the consent of the owner ; to have in possession a counterfeit trade mark, knowing it to be such ; to sell or offer to sell an article labeled with a trade mark which appears to indicate, but does not truly indicate the quantity, quality, character, place of manufacture or the name of the manufacturer. Then follows subdivision 6 which declares one guilty of a misdemeanor " Who knowingly sells, offers or exposes for sale, any goods which are represented in any manner, by word or deed, to be the manufacture or product of any person, firm or corporation, other than himself, unless such goods are contained in the original packages and under the labels, marks or names placed thereon by the manufacturer who is entitled to use such marks, names, brands or trade marks." (Penal Code, section 364, sub. 6, as it was prior to amendments of 1908.)

The part thus quoted prohibits the sale of goods, protected by a lawful trade mark, which are represented to be the manufacture of another, unless they are contained in the original package and under the label placed thereon by the manufacturer. In other words, it prohibits the sale of goods represented to have been made by the owner of a trade mark, except as contained in the original package and as put up by him under his label. The protection extends to the bottling of a liquid, for instance, as well as the making thereof. The statute says *the* original package, not *an* original package, thus showing it was the intention of the legislature, as applied to the case in hand, to prohibit the sale even of Wilson whisky under the

representation that it was placed in the original package by the Wilson Distilling Company, unless such was the fact. As was well said by Mr. Justice Clarke below: " The trade mark and label guarantees that the whisky in the bottle has not only been manufactured by the Wilson Distilling Company, but that the contents of the bottle have been placed in that identical bottle by the said company." (*People* v. *Luhrs*, 127 App. Div. 634, 635.)

The argument of the appellant that subdivision 6 simply makes it a crime to refill a Wilson bottle with whisky not made by the Wilson Company gives precisely the same meaning to both subdivisions 5 and 6, in violation of the rule of construction that all the words of a statute are to be given effect, if possible. It would be unreasonable to hold that the legislature intended to prohibit the same act by two successive commands, expressed in two successive clauses, each of which makes that identical act a crime, when the statute permits the construction that the second clause was aimed at a different evil, caused by a different act, the prohibition of which was necessary to furnish the complete protection which it was the object of the legislature to afford.

The main question discussed by counsel is whether the statute, as thus construed, violates either the State or the Federal Constitution. The object of the statute is to prevent fraud, affecting both the public and the owners of trade marks, by prohibiting the sale of goods from an original package labeled with a trade mark, upon the representation that such goods were placed in that package by the owner of the label. The enactment of statutes to prevent fraud is a proper exercise of the police power of the state, which is under the control of the legislature. The power to pass laws upon the subject necessarily carries with it the choice of methods to make the legislation effective. The right is not without limitation, for it must be so exercised as not to deprive a citizen of life, liberty or property without due process of law, or to deny to any person the equal protection of the laws. A reasonable regulation to protect the rights of all,

however, does not deprive any one of his property simply because it interferes with the use thereof to the extent necessary to protect the public from fraudulent practices. Legislation which interferes only to a reasonable extent with the enjoyment of property, in order to promote the general welfare and which in fact tends to promote the general welfare, violates neither Constitution. Numerous examples of such statutes sustained by the highest courts in both State and Federal jurisdictions, appear on page 350 of one of our recent reports and the cases there cited need not be here repeated. ( *Wright* v. *Hart,* 182 N. Y. 330, 350.)

It is urged that one who purchases Wilson whisky in Wilson bottles owns the bottles as well as the contents; that in case of accident he might preserve what was left by pouring it into some receptacle and thence, as he had occasion, into another Wilson bottle, which contained Wilson whisky when he bought it; that he might exhibit this bottle to induce a sale and thus sell the whisky and that if the statute prohibits such act it deprives him of property without due process of law.

This argument is plausible but unsound, for in buying a bottle with a trade mark thereon the purchaser does not acquire the right to use the trade mark except to sell the original contents of the bottle. He cannot lawfully use the trade mark to sell whisky of any kind bottled by himself. He cannot say, as he does in effect when he sells from a bottle bearing the Wilson label, " This is Wilson whisky, put in this bottle by the Wilson Company." He can still use the whisky or sell it, but he cannot sell it as Wilson whisky placed by the Wilson Company in the bottle exhibited at the time of the sale, for that would open the door to a kind of fraud that is easy to practice, difficult to detect and dangerous in result. To so hold would tend to undermine the law of trade marks, for the original package might be filled repeatedly with spurious goods, with no probable chance to discover the fraud. Even in the extreme case supposed, the statute would not deprive the owner of his property, but would sim-

ply prohibit him from so using it as to deceive others to their injury. A reasonable regulation governing the use of property offered for sale so as to prevent fraud, does not destroy that property nor deprive the owner of its use in a constitutional sense. In order to prevent fraud of the kind indicated the legislature had the right to adopt such reasonable methods as in its judgment were adequate to the evil, and hence to prohibit the sale of goods by the false representation that they were placed in the original package by the owner of the trade mark with which the package was labeled. The statute does not prevent the owner from using his property or selling it, but it forbids him to lie about it by word or deed in order to effect a sale. No sales are prohibited except such as are induced by falsehood, spoken or acted.

The statute now before us, in nature and effect, is utterly unlike those held unconstitutional in two cases, which seem to be the main reliance of the defendant. (*Wynehamer* v. *People*, 13 N. Y. 378; *Wright* v. *Hart*, 182 N. Y. 330.)

In the *Wynehamer* case it was held that intoxicating liquor, owned when the Prohibition Law of 1855 went into effect, was property, and as that act not only prohibited the sale thereof but declared it a public nuisance, withdrew from it all legal protection, authorized its destruction and made mere possession a crime, that it was a deprivation of property and a violation of the Constitution. No other judgment was possible and the analogy between that case and this extends no further than the rule that whisky is property, which every one now concedes.

Both the prevailing and the dissenting opinions in *Wright* v. *Hart* concede the power of the legislature to pass laws for the prevention of fraud to the full extent necessary to uphold the statute now under consideration. Moreover, the value of that case as an authority is impaired by a recent decision of the Supreme Court of the United States, which upheld a statute of another state similar in all respects to the one overthrown by us, except that some of its provisions were less stringent. (*Lemieux* v. *Young*, 211 U. S. 489.)

The Statute of Frauds, the Recording Act, the laws relating to usury, chattel mortgages, conditional sales and many others designed to prevent fraud, interfere with freedom of contract, which is one form of liberty, or with the enjoyment of property, which is under the protection of both Constitutions to the same extent as the property itself, yet it would be regarded as bold and reckless to challenge those statutes as unconstitutional. It is true that they sometimes result in great injustice, but the real test of legislation is its general effect, not rare instances of hardship, which cannot always be avoided in making general rules. (*City of Rochester* v. *West*, 164 N. Y. 510, 514.)

Thus, the tax on the right of succession to property may fall upon the same farm or dwelling house two or three times in as many years, yet as a general rule it touches property but once in a generation. It would not be reasonable to hold the tax confiscatory simply because in a rare case it might have that tendency, for it is the general working of an act that determines whether it bears a reasonable relation to the general welfare.

There is no evidence that the whisky substituted and sold by the defendant was Wilson whisky, and the presumption from the circumstances is that it was not; but assuming that it was, the hardship is no greater than occasionally happens under any of the statutes mentioned. It is not a violation of either Constitution to prohibit a person from misrepresenting what he has to sell in order to impose upon purchasers, even if the subject of the sale is an article just as good as the one it is represented to be. The command is valid which tells him he must not deceive the public in any way in order to sell his property. (*People* v. *Girard*, 145 N. Y. 105, 109.) It is the deception, the acted falsehood, the misrepresentation by deed that is the substance of the crime committed by the defendant, and legislation making his act a misdemeanor impairs no right of property, but simply prohibits a vicious use of property. The prohibition touches no honest man or honest act, but merely restrains the practice of fraud in order

to protect purchasers who buy on the strength of representations made and are entitled to what they pay for. It is the only way that purchasers or manufacturers can be adequately protected from substitution. No one can safely buy canned goods or bottled liquids unless he can rely on the truth of the label placed on the original package. The label in the case before us excluded substitution by the retail dealer of even the same kind of goods if they were not placed by the manufacturer in the bottle produced to induce the customer to buy a drink out of it.

The law treats whisky as property, and because it is property protects it the same as it protects milk, for instance. A trade mark on either is upheld with the same force and to the same extent. If milk is sold in bottles under a label stating that it is the product of a dairy well known to be reliable, and that it was placed in those bottles by the proprietor of the dairy, the public have the right to buy on the strength of the label and to invoke the protection of the law in making the purchase. The assurance that it was so bottled adds to the value of the milk, for if true, it excludes the possibility of substitution and fraud. The bottling is a material fact, for if done by the owner of the trade mark it guarantees the quality of the article and furnishes the purchaser with the means of distinguishing it from any other. The protection of bottling, therefore, is an important agency in the prevention of fraud and comes directly within the proper exercise of the police power by the legislature. It invades no constitutional right according to the settled principles of constitutional law.

The judgment of conviction should be affirmed.

GRAY, EDWARD T. BARTLETT, HAIGHT, WILLARD BARTLETT and CHASE, JJ., concur; CULLEN, Ch. J., absent.

Judgment of conviction affirmed.