## PEOPLE v. GRIFFIN et al.

### (Supreme Court, Trial Term, Cattaraugus County. April, 1911.)

1. FOOD (§ 8*)—OLEOMARGARINE—ACTION FOR PENALTIES—STATUTES—CONSTRUCTION—"CHURN."

Agricultural Law (Consol. Laws 1909, c. 1) § 41, prohibits the sale of any oleaginous substance not made from pure milk or cream, as a substitute for butter under any brand, device, or label bearing words indicative of cows or the product of the dairy, and the use of terms indicative of processes in the dairy in making or preparing butter. *Held,* that the sale of oleomargarine in cartons inscribed with the words "Purity Oleomargarine," "churned by the Capitol City Dairy Co.," "We are the only exclusive first quality churners in the U. S.," etc., violated the statute; the word "churn" in its primary and ordinary meaning conveying to the mind one of the processes of making butter, and being a term indicative of processes in the dairy in making or preparing butter, as used in the statute.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 8.*]

2. CONSTITUTIONAL LAW (§§ 240, 296*)—DUE PROCESS OF LAW—EQUAL PROTECTION.

Agricultural Law (Consol. Laws 1909, c. 1), § 41, prohibiting the sale of any oleaginous substance not made from pure milk or cream under any brand, device or label bearing words indicative of cows or the product of the dairy, and the use of terms indicative of processes in the dairy in making or preparing butter, does not contravene Const. N. Y. art. 1, § 6, providing that no one shall be deprived of life, liberty, or property without due process of law, or Const. U. S. Amend. 5, to the same effect, or amendment 14 thereof, providing that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. §§ 240, 296.*]

Action by the People against Frank Griffin and another. Judgment for plaintiff, and defendants' motion for a nonsuit, decision whereof was reserved, and also their motion for new trial, denied.

Layton H. Vogel, for the motion.
Alexander M. Laidlaw, opposed.

WHEELER, J. This action was brought to recover a penalty for an alleged violation of section 41 of the agricultural law of the state. The facts are undisputed.

The defendants conduct a grocery store at Allegany, Cattaraugus county. On November 10, 1909, they sold and delivered to an agent of the Commissioner of Agriculture of this state a package or brick of oleomargarine which had been manufactured by the Capitol City Dairy Company, of Columbus, Ohio. The oleomargarine was inclosed

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in a pasteboard carton.  On one face or side of the carton were printed the words:  "*Purity Oleomargarine.*"  On another face the words:  "*Churned by the Capitol City Dairy Co., Columbus, Ohio.*" On the third face the words:  "*We are the only 'exclusive first quality' churners in the U. S.*"  On the fourth face the words:  "*Caution and Guarantee.  This carton contains the acme of churning science, and to guard against imposters and imitators see that our name appears and that seal is unbroken.  We guarantee the contents to be made of pure and wholesome materials, in a scrupulously clean manner under State and Federal inspection.  U. S. inspected and passed under the Act of Congress of June 30, 1906.  Establishment 623.*"

[1]  The people contend that the use of these words upon the package violated the provisions of section 41 of the agricultural law, part of which reads:

"Nor shall any person manufacturing, selling or offering for sale any such goods (any oleaginous substance not made from pure milk or cream of the same as a substitute for butter) make or sell them under any brand, device or label bearing words indicative of cows or the product of the dairy  *  *  * nor use terms indicative of processes in the dairy in making or preparing butter."

The defendants were permitted to show that the oleomargarine was manufactured by the Capitol City Dairy Company of Columbus, Ohio; that that company is a corporation organized under the laws of the state of New Jersey; that it operates a factory for making oleomargarine at Columbus; that this company also owns five creameries in the state of Ohio, and sometimes made butter at these creameries, and sometimes took the milk from these creameries and mixed it with other oils and fats for the purpose of making oleomargarine; that to do this the milk was placed with other oils and fats in receptacles called "churns," and the mass agitated by means of revolving dashers.  The words "churn" and "churning" appear to be the usual and ordinary terms employed in the process of manufacturing oleomargarine.  Evidence was also given showing the words "churn" and "churning" are not confined to dairy processes, but are also used in navigation to describe certain agitation of the water caused by the action of propeller wheels, and in mining to designate certain action or use of drills.  It is argued that the word "churn" simply means to stir, beat, or agitate, and has no exclusive application to the making of butter, and therefore the manufacturer and seller of oleomargarine has the right to employ the word upon the cartons used to wrap the article, and to prohibit its use in that connection is unconstitutional, and in violation of section 6 of article 1 of the New York State Constitution, and of amendments 5 and 14 of the Constitution of the United States.

Section 6 of article 1 of the New York Constitution provides that no one shall "be deprived of life, liberty or property without due process of law"; and amendment 5 of the United States Constitution is to the same effect, while amendment 14 of the United States Constitution contains the following:

"Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Unquestionably the word *"churn"* has many legitimate applications, and is not confined to the process of butter making, but in its primary and ordinary meaning it conveys to the mind one of the processes of making butter. It certainly is a word or term *"indicative of processes in the dairy in making or preparing butter,"* as used in the statute. However properly the terms may be used as descriptive of other processes in the arts or in manufacture, it nevertheless falls within the condemnation of the statute, and the statute must be enforced unless it be found violative of some constitutional right.

[2] The purpose of the statute forbidding the use of labels or words indicative of dairy processes on substitutes for butter is to prevent deception and imposition in the sale of oleomargarine, causing the purchaser to mistake the article sold for pure dairy butter. The forty-first section of the agricultural law so expressly declares. The prohibition is an absolute one against the use of any brand or label "indicative of cows, or of the product of the dairy" or "terms indicative of processes in the dairy in making or preparing butter."

The manufacture and sale of oleomargarine is not unlawful. It has been declared a legitimate business, which Legislatures have no right to prohibit or restrain. People v. Marx, 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34. Nevertheless, it has also been held that the Legislature may by law require that it shall be sold for what it is, and not for dairy butter, and guard the public against imposition by preventing the simulated article being put upon the market in such a form and manner as to be calculated to deceive. In People v. Arensburg, 105 N. Y. 129, 11 N. E. 278, 59 Am. Rep. 483, the court said:

"Assuming, as is claimed, that butter made from animal fat or oil is as wholesome, nutritious, and suitable for food as dairy butter, that it is composed of the same elements and is substantially the same article, except as regards its origin, and that it is cheaper, and that it would be a violation of the constitutional rights and liberties of the people to prohibit them from manufacturing or dealing in it for the mere purpose of protecting the producers of dairy butter against competition, yet it cannot be claimed that the producers of butter made from animal fat or oils have any constitutional right to resort to devices for the purpose of making their product resemble in appearance the more expensive article known as dairy butter, or that it is beyond the power of the Legislature to enact such laws as they may deem necessary to prevent the simulated article being put upon the market in such form and manner as to be calculated to deceive. If it possesses the merits which are claimed for it, and is innocuous, those making and dealing in it should be protected in the enjoyment of liberty in those respects; but they may legally be required to sell it for and as what it actually is, and upon its own merits, and are not entitled to the benefit of any additional market value which may be imparted to it by resorting to artificial means to make it resemble dairy butter in appearance. It may be butter, but it is not butter made from cream, and the difference in cost or market value, if no other, would make it a fraud to pass off one article for the other."

In the case of People v. Girard, 145 N. Y. 105, 39 N. E. 823, 45 Am. St. Rep. 595, the Court of Appeals again upheld as constitutional a statute declaring:

"No person shall manufacture, sell or keep for sale any vinegar which shall contain any preparation * * * injurious to health, or any artificial coloring matter."

As to the coloring matter, the provisions of the statute were upheld on the ground the Legislature had the right to prohibit it to prevent fraud and deception of the public.

In the very recent case of People v. Luhrs, 195 N. Y. 377, 89 N. E. 171, 25 L. R. A. (N. S.) 473, the statute under consideration prohibited the sale of goods protected by a lawful trade-mark, which are represented to be the manufacture of another, unless contained in the original package, and under the label placed thereon by the manufacturer. The constitutionality of the statute was sustained for the reason the object of the statute was to prevent fraud, and was a proper exercise of the police power of the state. Judge Vann, speaking for the court, said:

"The main question discussed by counsel is whether the statute, as thus construed, violates either the state or the federal Constitution. The object of the statute is to prevent fraud, affecting both the public and the owners of trade-marks, by prohibiting the sale of goods from an original package labeled with a trade-mark, upon the representation that such goods were placed in that package by the owner of the label. The enactment of statutes to prevent fraud is a proper exercise of the police power of the state, which is under the control of the Legislature. The power to pass laws upon the subject necessarily carries with it the choice of the methods to make the legislation effective. The right is not without limitation, for it must be so exercised as not to deprive a citizen of life, liberty or property without due process of law, or to deny to any person the equal protection of the laws. A reasonable regulation to protect the rights of all, however, does not deprive any one of his property simply because it interferes with the use thereof to the extent necessary to protect the public from fraudulent practices. Legislation which interferes only to a reasonable extent with the enjoyment of property, in order to promote the general welfare, and which in fact tends to promote the general welfare, violates neither Constitution. Numerous examples of such statutes sustained by the highest courts in both state and federal jurisdictions appear on page 350 [182 N. Y. (75 N. E. 404, 2 L. R. A. [N. S.] 338)] of one of our recent reports, and the cases there cited need not be here repeated. Wright v. Hart, 182 N. Y. 330, 350 [75 N. E. 404, 2 L. R. A. (N. S.) 338]."

In Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154, 39 L. Ed. 223, the statute of Massachusetts "to prevent deception in the manufacture and sale of imitation butter," in its application to the sale of oleomargarine artificially colored so as to cause it to look like yellow butter, and brought into Massachusetts, was held not in conflict with the power in Congress to regulate commerce among the several states, and at page 468, 155 U. S., at page 156, 15 Sup. Ct. (39 L. Ed. 223), the court said:

"He is only forbidden to practice in such matters a fraud upon the general public. The statute seeks to suppress false pretenses, and to promote fair dealing in the sale of an article of food. It compels the sale of oleomargarine for what it really is by preventing its sale for what it is not."

And at page 479, 155 U. S., at page 161, 15 Sup. Ct. (39 L. Ed. 223):

"The Constitution of the United States does not secure to any one the privilege of defrauding the public."

In Lemieux v. Young, 211 U. S. 489, 29 Sup. Ct. 174, 53 L. Ed. 295, the United States Supreme Court declared it is within the police power of a state to regulate sales of entire stocks in trade in bulk

so as to prevent fraud on innocent creditors, and the court declared that statutes of this character "cannot be held to be repugnant to the due process clause of the fourteenth amendment, because of the nature or character of the regulations which the statute embodies, unless it clearly appears that those regulations are so beyond all reasonable relation to the subject to which they are applied as to amount to mere arbitrary usurpation of power."

Applying the doctrine of these carefully considered cases to that in hand, we can reach no conclusion other than that the statute under which this action is brought is constitutional and valid, and the defendants have subjected themselves to the penalty imposed. The statute was plainly designed to protect the public against fraud and imposition in the sale of imitation or substitute butter. It was not necessary, to enable the manufacturer to produce and market its oleomargarine, to use the words *"churners"* or *"churned"* or *"churning"* on the labels, cartons, or wrappings on the substance sold. When used in connection with the words "Dairy" or "Dairy Co.," the terms were naturally misleading and calculated to deceive. The legitimate inference is they were placed on the packages for that very purpose.

Whether the words actually did deceive or not we deem of little importance in the disposition of this case. As was said by the court in the case of People v. Luhrs, 195 N. Y. 381, 89 N. E. 172, 25 L. R. A. (N. S.) 473:

"The power to pass laws on the subject necessarily carries with it the choice of the methods to make the legislation effective."

For the protection of the public, the Legislature has seen fit to make the provisions of the act broad and comprehensive in terms, as best adapted to accomplish the purpose in view. It became the duty of all persons within the jurisdiction of the state to respect and obey the law as it stands, and not to claim exceptions and exemptions from its operation on the plea that by reason of the presence of some other word or words on the packages the purchaser might ascertain that, after all, the article sold was not butter, but oleomargarine.

The court is therefore clearly of the opinion that it committed no error in directing a verdict in favor of the plaintiff for the amount of the penalty asked. This ruling was correct, irrespective of the question as to whether or not it was lawful to place the name of the manufacturer on the package.

It is contended that the word "Purity" is the *"brand, devise or label,"* under which the particular subject was bought and sold, and that the words "churned," "churning," and "churners" under which the particular product was sold and as used has no more bearing upon or connection with the "brand, devise or label" than the directions for use would have upon a package of patent medicine. The argument does not appeal to the court as well founded. In the court's opinion the statute was designed to prohibit the use of words or terms indicative of dairy processes generally when printed on wrappings or cartons containing the substance. We do not think the courts should endeavor to refine away the clear purpose and intent of the Legislature, but endeavor, so far as possible, to so construe statutes as to

carry out its clear intent. Whether or not the use of the manufacturer's name, the "Capitol City Dairy Company," on the cartons, is prohibited, is a more serious question. The same forty-first section of the agricultural law provides that the packages shall be wrapped and sealed, the original seal of which shall be unbroken, and upon which seal shall be plainly printed the name and address of the manufacturer of the said oleomargarine. The direction to have the name of the manufacturer appear is confined to the seal itself, and not to the carton or other wrapping. In this case the manufacturer went further and put its name on the carton. When used in connection with the words "churners," "churned," and "churning," the tendency was to deceive.

We do not think, however, that we are called upon to pass on the question as to whether or not the printing of the name of the manufacturer on the carton alone would violate the law, because, in our opinion, the case is made out by the use of the other words specified, and the people are entitled to recover the penalty prescribed by the statute.

For these reasons, the motion for a nonsuit made at the close of the plaintiff's case, the decision of which was reserved pursuant to the provisions of section 1187 of the Code of Civil Procedure, as well as the motion for a new trial on the minutes, are denied. So ordered.