LANVIN PARFUMS, INC., Respondent, *v.* LE DANS, LTD., et al., Appellants, et al., Defendants.

First Department, December 20, 1960.

106

*Robert Goldstein* for appellants.

*Jay Leo Rothschild* for respondent.

BREITEL, J. P. Involved on this appeal is the question whether the rebottling and resale of plaintiff's trade-marked products, consisting of colognes and toilet waters, were illegal, although the new bottles and the labels which they bore made complete disclosure of the fact of rebottling and that the rebottler had no connection with the manufacturer or plaintiff. The question arises on a motion addressed to the legal sufficiency of the complaint (Rules Civ. Prac., rule 106). Plaintiff's pleading seeks an injunction and damages against defendant rebottlers and their principal officers. Although this is a civil action it is bottomed, concededly and solely, on the provisions of a criminal statute: subdivision 6 of section 2354 of the Penal Law.

Special Term sustained the complaint, and in so doing, it held that the criminal statute forbade the resale of any trademarked product, represented to be the product of the manufacturer, except in its original container. It thus excluded, as urged by plaintiff, the necessity for any element of fraud or deception. For reasons later assigned, the order should be reversed and the complaint dismissed for insufficiency.

Plaintiff, a Delaware corporation, imports from France various perfumes and perfume extracts and sells them either in the original packages or as toilet water which plaintiff packages. The products always bear labels, marks and names, " placed thereon for and by " and which plaintiff is " entitled to use ". These trade-marks, in fact, relate to the manufacturer of the products, which is not plaintiff. The corporate defendants purchase plaintiff's toilet waters, rebottle or repackage them in smaller containers of one dram each and sell them at correspondingly reduced prices. The new packages are labeled to identify the contents as plaintiff's products but also to state that the rebottling was done by the corporate defendants and that the corporate defendants are wholly independent of plaintiff. Indeed, plaintiff has stipulated in its brief, in agreement with defendants, that the inscriptions on defendants' bottles read

substantially as follows, with changes appropriate to each of the corporate defendants:

## "LANVIN'S ARPEGE

Eau de Lanvin

### REBOTTLED FROM THE GENUINE PRODUCT

By

Le Dans, Ltd.

### WHOLLY INDEPENDENT OF LANVIN

New York, N. Y. 1 Dram "

Plaintiff contends that although there is a complete disclosure and no misstatement of any fact to the deception of a purchaser, nevertheless the statute prohibits, on penalty of misdemeanor, such rebottling and resale so long as plaintiff's trade names are used and the public is advised that the contents are plaintiff's products. Defendants urge, on the other hand, that the statute does not so provide, and that, if it did, it would be an unconstitutional interference with defendants' property rights in the specific toilet waters acquired by them by purchase.

In pertinent part the statute reads as follows:

" A person who: * * *

" 6. Knowingly sells, offers or exposes for sale, any goods which are represented in any manner, by word or deed, to be the manufacture, packing, bottling, boxing or product of any person, firm or corporation, other than himself, unless such goods are contained in the original package, box or bottle and under the labels, marks or names placed thereon by the manufacturer who is entitled to use such marks, names, brands, or trade-marks; or,

* * *

" Is guilty of a misdemeanor ". (Penal Law, § 2354, subd. 6.)*

Plaintiff urges its own version of a literal reading of the statute. It points out that the subdivision contains no qualification expressly related to the element of fraud or deception.

---

* Because it is rare that a part of a statute should be read in disassociation from its context it is appropriate to read the above-quoted subdivision in the section in which it is found. The section, in its entirety, appears as an appendix (pp. 114–115, *infra*) to this opinion.

Of course, if such literal reading were ever to be imported into statutory interpretation the effect could be quite deadly (*Church of Holy Trinity* v. *United States,* 143 U. S. 457). Moreover, such a literal reading would begin to give plaintiff difficulties on another score. The statute, while referring to representations that the product is the manufacture, packing, bottling, boxing or product of another, refers later only to the "manufacturer" who is entitled to use such names. Plaintiff itself is not the manufacturer but an importer and a rebottler. But, of course, statutes are not to be read with a literalness that kills the meaning, the intention, the purpose, or the beneficial end for which the statute has been designed (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 111 *et seq.* and the many cases cited). This is both elementary and elemental.

Although subdivision 6 of section 2354, then as section 364 of the Penal Code was added in its original form in 1889 (L. 1889, ch. 45), and as far back as 1908 (L. 1908, ch. 427) it was amended to cover bottlers, boxers, and packers, rarely, if ever, has it been suggested by a court* that its design was to prevent rebottling with truthful labels, including a trade name. On the contrary, it has been uniformly held that the statute is a fraud statute and that in the absence of fraud or deception it would lack constitutional validity.

The leading and controlling case in the interpretation of the provision has been *People* v. *Luhrs* (195 N. Y. 377). The *Luhrs* case, a criminal case, involved prosecution of a bartender for dispensing whiskey from a bottle bearing the label of the Wilson Distilling Company. It appeared that the whiskey contained in the bottle had not been placed in the bottle lastly by the manufacturer but had more recently come from a demijohn positioned below the bar. Because the prosecution did not prove that the whiskey in the demijohn was not Wilson whiskey the court was obliged to face the issue whether the violation was made out even if the whiskey from the demijohn had been manufactured by the Wilson Company. It was held that in such circumstances there was a violation because there was a tacit, and false, representation that the whiskey poured from the Wilson bottle was the same whiskey that had been last placed in that bottle, without refilling, by the distillers whose label the bottle bore. The court emphasized that the actual bottling is a material fact "for if done by the owner of the trade mark it guarantees the quality of the article and furnishes the pur-

---

* Perhaps once, but even there it is not clear: *Coty* v. *Prestonettes, Inc.,* 285 F. 501, 513–515, revd. 264 U. S. 359, *infra.* Research reveals no New York case that dispenses with the element of fraud.

chaser with the means of distinguishing it from any other" (p. 385). In so holding the court also distinguished the effect of subdivision 5 of the statute from subdivision 6. It pointed out that the purpose of subdivision 6, as compared with subdivision 5, was to cover the situation where there had been a rebottling or repackaging so that reliance upon the original manufacturer or bottler, as distinguished from the repackager, was not properly warranted. Subdivision 5, on the other hand, of course, rested upon the falsity of representation with regard to contents, as distinguished from falsity of representation with regard to packaging.

What is most significant for this case, however, is that the Court of Appeals, speaking through Judge VANN, repeatedly emphasized the fraud aspect of the case, and of the statute, in order to sustain the statute's validity on constitutional grounds. Thus in the very opening it was stated that the purpose of the Legislature was to protect both the public and the owner from the "furtive use" of trade-marks (p. 380). It was said: "The statute says *the* original package, not *an* original package, thus showing it was the intention of the legislature, as applied to the case in hand, to prohibit the sale even of Wilson whisky", and then there was added: "under the representation that it was placed in the original package by the Wilson Distilling Company, unless such was the fact" (pp. 380–381) (emphasis in original).

Yet, again, the court said: "The object of the statute is to prevent fraud, affecting both the public and the owners of trade marks, by prohibiting the sale of goods from an original package labeled with a trade mark, *upon the representation that such goods were placed in that package by the owner of the label*" (p. 381) (emphasis supplied). So as to leave no doubt, the court later added: "The statute does not prevent the owner from using his property or selling it, but it forbids him to lie about it by word or deed in order to effect a sale. No sales are prohibited except such as are induced by falsehood, spoken or acted" (p. 383). Then, in discussing the constitutional validity of the statute, the court said as follows: "The command is valid which tells him [the bartender] he must not deceive the public in any way in order to sell his property. * * * The prohibition touches no honest man or honest act, but merely restrains the practice of fraud" (p. 384). There is still more in the opinion by Judge VANN, as there was also in the opinion by Mr. Justice CLARKE in the Appellate Division (127 App. Div. 634, 638) to similar effect. Moreover, in this court, the dissenting opinion by Mr. Justice McLAUGHLIN, concurred in by Mr. Justice INGRAHAM, and the concurring opinion by Mr. Justice

HOUGHTON all assess the statute from the single viewpoint of fraud. In other words, regardless of their conclusions as to result, every Judge in this court or in the Court of Appeals, who voted in the case, viewed the statute as requiring misrepresentation, tacit or expressed, before there could be a violation.

Now, of course, the wrongs charged to defendants in this case are not that they practiced any fraud or deception or that they lied, but that they resold plaintiff's products in lesser quantities at fractionalized prices and that they told the truth. Plaintiff would have no objection to the reselling if defendants would suppress the fact and keep from the consumer the information that the products contained in the new packages are the products imported or bottled by plaintiff.

The principle laid down in the *Luhrs* case has been uniformly followed. This court, in *People* v. *Goetz* (234 App. Div. 421), applied it. In doing so, it was said (with respect to trade-marked cosmetic products resold from broken packages, but with the separate products still containing the mark of the maker) that " There being no intent on the part of the defendant to defraud, indicated in any of these acts, and the mere selling of the separate articles from the one package not being prohibited by law, the proof offered showed no offense against the statute and the defendant should have been acquitted " (p. 423). Earlier in its opinion the court had emphasized that defendant, in selling the product, had stated unequivocally to the complaining witness what were the true facts (cf. *People* v. *Hoffheimer*, 110 App. Div. 423).

On the occasions in which the statute has been discussed, in any detail, in recorded cases at nisi prius the presence of the fraud element has been emphasized. Thus, in *People* v. *Griffin* (71 Misc. 568, 572) there was dictum to the effect that in the *Luhrs* case the statute was sustained as constitutional because it was aimed at fraud. In *Pinaud Inc.* v. *Beaux Arts Chemists Corp.* (170 Misc. 583, 585–586) Special Term described the provision in question in the following words: " It is quite clear that the section aims against deception of a customer and is to be read in this light. * * * (*People* [*Complaint of Dietch*] v. *Goetz*, 234 App. Div. 421.) " To the same effect, see *B. V. D. Co.* v. *Kommel* (200 F. 559 [C. C. A. 2d]).

In the light of the precedents and the unequivocal expression of the *ratio decidendi* in *People* v. *Luhrs* (195 N. Y. 377, *supra*), one might well question the necessity for the detailed analysis presented thus far. The occasion, however, is suggested by the very plausible presentation made by plaintiff which thus

makes necessary detailed restatement of the principles and the precedents.

Of course, the reading of subdivision 6 as a fraud statute need not depend only upon the happenstance of precedents, important as that is. The section in which the subdivision is found is a fraud statute. The statute is a criminal statute. A criminal sanction is a harsh remedy to invoke with respect to otherwise honest business activities unless such intention is made manifest. But what is even more difficult to accept in plaintiff's contentions is that on its reading the statute would penalize the fact of disclosure of the truth. In order to accomplish this feat it would involve an extension of protectible interests in trade-marks not even recognized under Federal law (*Prestonettes, Inc.,* v. *Coty,* 264 U. S. 359).

In the *Prestonettes* case it was held (per HOLMES, J.) that the '' property right '' of a trade-mark owner did not extend to preventing the resale in repackaged form of the trade-mark owner's product, with trade-mark, so long as there was no deception. Notably, in that case, which arose in New York, the court had cited to it subdivision 6 of section 2354 of the New York Penal Law. The statute was disregarded, however, by Mr. Justice HOLMES. Thus, the court went on to hold that the practice of Prestonettes, Inc., which was much like that of defendants in this case, was not a violation of the trade-mark laws.

Moreover, if plaintiff were correct in its contentions utterly intolerable results would follow. Consider the kind of combination package involved in *Eastman Kodak Co.* v. *Siegel* (2 Misc 2d 966, mod. on other grounds 1 A D 2d 1002). There the camera manufacturer sold and distributed a combination package containing a camera, a flashgun, and batteries and lamps for the flashgun. Concededly, the batteries and lamps were not made by it, and were presumably removed from their original packages. If Eastman Kodak were to indicate on its package that the batteries and lamps were made, respectively, by Union Carbide Corporation and General Electric Company, then, on plaintiff's version of the statute, it would be violating the statute merely because the batteries and lamps were no longer in their original packages. Consider too, the vendor who repackages for convenience in consumption Taylor's Pork Sausage, trade name biscuits, and the like, and repeats the trade name in connection with the resale. The illustrations, if plaintiff's construction were the correct one, could be extended indefinitely.

Indeed, too, were the statute to condemn activity in the absence of fraud there would be a serious question of constitutionality raised — the very question that troubled the Court of Appeals in the *Luhrs* case (*supra*) and the Supreme Court in the *Prestonettes* case (*supra*). (See, also, *People* v. *Bunis,* 9 N Y 2d 1, decided Jan. 15, 1961.) Assuming that, with the passage of the decades, there has been an extension of thinking with respect to the protection of trade names and trade-marks, which undoubtedly there has been, the gravity of the question for this case would not be eliminated. Apart from constitutional issues (which, fortunately, may be avoided) as a paramount consideration of policy, if there were to be any extension in this area, affecting as it would such complicated issues of policy, and involving a marked restriction on commercial activity, the impulse should come from the Legislature rather than from the courts, especially if it were to be in violation of the teachings in the *Luhrs* case.

It should be noted that in the analysis thus far, while the constitutional problem has been mentioned, no conclusion has been based on that aspect. This, despite the fact that in the *Luhrs* case (*supra*) it was found necessary to analyze the problem in that very frame of reference. Of course, the mere potentiality for fraud, as distinguished from the actuality of fraud, may permit a Legislature, in the exercise of the police power, to impose restrictions upon commercial activity. However, what is clearly evident is that the power to legislate is less in the area where there is merely the potentiality for fraud as compared with actual fraud. Otherwise, there are no limits, for there is no human economic activity that does not have a potentiality for fraud.

Nor is that the end of the matter insofar as constitutional analysis is involved. It is a primitive literalism which would require statutes to be literally construed so long as the literal construction does not violate a constitution. This would be no more appropriate than construing contracts literally so long as the literal interpretation did not render the contract invalid. There are no such principles of construction. Nor is it true that the literal necessarily yields intention. The fact is that intent is not discovered by literal reading of abstracted words, but by interpretation in context and circumstances (*Matter of Capone* v. *Weaver,* 6 N Y 2d 307, 309). Indeed, in the *Church of Holy Trinity* case (143 U. S. 457, *supra*), a literal but constitutional interpretation of the immigration statute would have barred the distinguished clergyman. Thus, Mr. Justice BREWER said, so long ago: '' It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute,

because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.'' (p. 459.)

To the extent that there are useful principles of construction for finding intention, the cardinal one is manifested intent and not the dictionary meaning of literal language. Thus it was Judge LEARNED HAND who was provoked to assert that '' it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary '' (*Cabell v. Markham,* 148 F. 2d 737, 739).* Fortunately, because the Court of Appeals and the courts that have followed in its train have interpreted the language of the statute, it is not necessary in this case to explore the constitutional limits of the legislation. However, there is a positive obligation to avoid stretching the statutory language in unnecessary violation of the precedents (not only in the Court of Appeals, but in this court) and to the disruption of commerce recognized as valid in *Prestonettes, Inc.,* v. *Coty (supra)* and such following cases as *Pinaud Inc.* v. *Beaux Arts Chemists Corp. (supra).* Indeed, the form of the labels used in this case almost slavishly follows that described in the *Prestonettes* case.

There is yet another phase to this case. Plaintiff seeks an injunction to prevent an act that it contends is criminal. It is elementary law that injunction will not lie merely to prevent a crime. True, if the criminal act occasions damage or impairs a property right an injunction may be obtained although there is also a criminal penalty (*People ex rel. Bennett* v. *Laman,* 277 N. Y. 368, 376; 43 C. J. S., Injunctions, §§ 150–152). But, the complaint establishes no damage, if the doctrine in *Prestonettes,*

---

\* Compare the earlier language there to this case:

'' The defendants have no answer except to say that we are not free to depart from the literal meaning of the words, however transparent may be the resulting stultification of the scheme or plan as a whole.

'' Courts have not stood helpless in such situations; the decisions are legion in which they have refused to be bound by the letter, when it frustrates the patent purpose of the whole statute. We need cite no others than the more recent of those in the Supreme Court which have followed Rector, etc., of Holy Trinity Church v. United States, 143 U. S. 457 \* \* \* [cases cited] ''.

*Inc.,* v. *Coty* (*supra*) is controlling and the trade-mark rights do not extend to resale in the absence of deception. Because, in the latter event plaintiff has no property or equivalent right to protect by injunction.

There is still another defect in the complaint insofar as the individual defendants are concerned. In view of the determination on the principal merits extended discussion is not warranted. It should be pointed out, however, that merely to say of an individual that he is the owner of stock of a corporation and controls its activities does not imply that every act committed by the corporation is one for which the individual is personally responsible in fact. The fallacy involved is that control of the whole, in the case of a corporation, does not mean control in fact of every part, especially for the purpose of imposing individual liability. If this were not so, then no close corporation, let alone a one-man corporation, could safely effect limited liability for its stockholders; nor would the stockholder escape criminal or tort responsibility for any act committed by any employee (no matter how numerous the employees) if done in the course of the employment, and even if done in foreign parts without the knowledge of the principal controlling stockholder.

It is evident then that the complaint fails to allege any cause of action against any of the defendants. It is equally evident that plaintiff is not in a position to plead a sufficient cause of action against any of the defendants on any theory stemming from the criminal statute.

Accordingly, the order denying defendants' motion to dismiss the complaint for legal insufficiency should be reversed, on the law, with costs to defendants-appellants, the motion granted and the complaint dismissed.

## APPENDIX

§ 2354. Offenses against trade-marks.

A person who:

1. Falsely makes or counterfeits a trade-mark; or,

2. Affixes to any article of merchandise, a false or counterfeit trade-mark, knowing the same to be false or counterfeit, or the genuine trade-mark, or an imitation of the trade-mark of another, without the latter's consent; or,

3. Knowingly sells, or keeps or offers for sale, an article of merchandise to which is affixed a false or counterfeit trade-mark, or the genuine trade-mark, or an imitation of the trade-mark of another, without the latter's consent; or,

4. Has in his possession a counterfeit trade-mark, knowing it to be counterfeit, or a die, plate, brand or other thing for the purpose of falsely making or counterfeiting a trade-mark; or,

5. Makes or sells, or offers to sell or dispose of, or has in his possession with intent to sell or dispose of, an article of merchandise with such a trademark or label as to appear to indicate the quantity, quality, character, place of manufacture or production, or persons manufacturing, packing, bottling, boxing or producing the article, but not indicating it truly; or,

6. Knowingly sells, offers or exposes for sale, any goods which are represented in any manner, by word or deed, to be the manufacture, packing, bottling, boxing or product of any person, firm or corporation, other than himself, unless such goods are contained in the original package, box or bottle and under the labels, marks or names placed thereon by the manufacturer who is entitled to use such marks, names, brands or trade-marks; or,

7. Shall sell or shall expose for sale any goods in bulk, to which no label or trade-mark shall be attached, and shall by representation, name or mark written or printed thereon, represent that such goods are the production or manufacture of a person who is not the manufacturer; or,

8. Shall knowingly sell, offer or expose for sale any article of merchandise, and shall orally or by representation, name or mark written or printed thereon or attached thereto used in connection therewith, or by advertisement, or otherwise, in any manner whatsoever make any false representation as to the person by whom such article of merchandise or the material thereof was made, or was in whole or in part produced, manufactured, finished, processed, treated, marketed, packed, bottled or boxed, or falsely represent that such article of merchandise or the material or any part thereof has or may properly have any trade-mark attached to it or used in connection with it, or is or may properly be indicated or identified by any trade-mark,

Is guilty of a misdemeanor and punishable for the first offense by a fine not less than fifty dollars nor more than five hundred dollars or imprisonment for not more than one year, or both such fine and imprisonment, and for each subsequent offense by imprisonment for not less than thirty days or more than one year, or by both such imprisonment and a fine of not less than five hundred dollars or more than one thousand dollars.

RABIN, J. (dissenting). I dissent and vote to affirm the order sustaining the sufficiency of the complaint.

The statute under consideration plainly prohibits the sale of the product of the plaintiff except in the original container as bottled by the plaintiff if it is held out as the plaintiff's product. The majority would read into that statute something the Legislature did not write. It would read into the statute a requirement that before there could be a violation there must be actual fraud or misrepresentation proven. As authority for such holding, it relies on the case of *People* v. *Luhrs* (195 N. Y. 377). I have come to the conclusion that that case does not make such proof mandatory.

At the outset, I wish to observe that there is no basic rule that a statute written by the Legislature may not be read literally. To the contrary it should be so read unless it is manifest that by so doing it would distort the intention of the Legislature. Nor do I take the position that it must be read literally merely because as so read it would not violate any constitutional provision. I do think it should be read literally if so reading it tends to carry out the intent of the Legislature.

I agree that subdivision 6 of section 2354 of the Penal Law was designed to prevent fraud. The section itself clearly so indicates and the Court of Appeals in *People* v. *Luhrs* (*supra*)

held such to be the purpose. It is my view, however, that that section was directed not only to situations involving actual fraud but that it was also intended to establish safeguards which would prevent the likelihood of fraud. In other words it was intended to prevent transactions which are pregnant with fraudulent possibilities. The Legislature has the power in seeking to correct an evil to go beyond the precise confines of the evil to be avoided so as to make more unlikely the occurrence of such evil. That was the spirit that the court in the *Luhrs* case found to have motivated the Legislature. This was indicated by the Court of Appeals' statement that even if genuine Wilson whiskey had been transferred to the original Wilson bottle there was nevertheless a violation of the statute. True, the court based its finding in that case upon the tacit misrepresentation that the whiskey had been originally bottled by Wilson. But, as a practical matter, how is the buyer injured so long as he in fact gets Wilson whiskey? It was to protect against the possibility of fraud accompanied by injury, i.e., adulteration, substitution, etc., that the Legislature made such conduct a crime even if the rebottled whiskey were actually Wilson whiskey.

The statute as I see it has a twofold purpose; first, to protect the buying public and, second, to give a measure of protection to the manufacturer and owner of the trade-mark. The latter purpose is clearly spelled out in the title of section 2354 — " Offenses against trade-marks ". A literal reading of the statute would give force to this legislative intent, i.e., with respect to the public, to assure that it is the exact unadulterated and unspoiled product of the manufacturer that is sold and, with respect to the manufacturer, that it receive the protection against the defamation of its name and product if rebottling should result in deterioration of that product. The provision that the original product be retained in the original bottle " guarantees the quality of the article " (*People* v. *Luhrs, supra,* p. 385) and thus carries out one of the salutary objects of the legislative enactment. I can readily visualize the possibilities of fraud if it were encumbent upon a manufacturer to follow each bottler who uses its name and to try to detect and to prove adulteration and deterioration of its product. Protection against fraud would well-nigh be impossible in such circumstances. It is within the police power of the Legislature to provide a practical means of guarding against frauds of that nature. Unless we interpret the statute literally as written, there would be no suitable remedy for there would be " no probable chance to discover the fraud " (*People* v. *Luhrs, supra,* p. 382). Of course, I appreciate that we can pick statements

from the Court of Appeals opinion in the *Luhrs* case which would seem to indicate that there must be fraud or misrepresentation actually proven. However, the rationale of that case sustains the position that the Legislature intended, in a practical way, to prevent fraud and the possibility of the perpetration of fraud.

There is further evidence that a literal reading of the statute is required to reflect the legislative intent. The statute not only makes unlawful the sale of the rebottled products, but it also makes it unlawful to expose or exhibit such products for sale. If it were the intention that actual fraud or misrepresentation be the test of a violation, how could the mere exposure of such products without a sale constitute a violation?

Of course, the product when purchased by the defendants belonged to the defendants. They had a right to do with it what they would, but they had no right to do as they chose with the name of the manufacturer. That was expressly prohibited by the statute and I believe it to be a reasonable prohibition for the welfare of the public as well as for the protection of the manufacturer. For the above reasons, I cannot concur with the majority.

I should also comment on the request for injunctive relief. It is apparent that a violation of this statute will do damage to this plaintiff specifically, and it is also apparent that it will cause it irreparable harm — harm that cannot be compensated for in money only. The only effective relief which can be given is by way of injunction.

Likewise, I find no insufficiency in the complaint insofar as it seeks relief against the individual defendants. The allegations are sufficiently broad to connect those defendants as individuals with a violation of the statute.

Accordingly, I vote to affirm.

Valente, Eager and Noonan, JJ., concur with Breitel, J. P.; Rabin, J., dissents and votes to affirm in opinion.

Order, entered on March 4, 1960, denying defendants-appellants' motion, pursuant to rule 106 of the Rules of Civil Practice, to dismiss the complaint for insufficiency, as to each of them, reversed, on the law, with $20 costs and disbursements to appellants, and the motion to dismiss the complaint for legal insufficiency granted, with $10 costs.