MULLINS, JR., *v.* THE PEOPLE.

24 399
f152 139

A common-law *certiorari* to review a summary conviction under a penal statute brings up, not only questions affecting the jurisdiction of the magistrate and the regularity of the proceedings, but the question whether there was any evidence to warrant the conviction.

In such cases, the evidence must appear on the face of the record, or the conviction will be quashed.

The act in relation to the sale of bottles, &c. (ch. 117 of 1860), imposes no penalty for the secreting of a bottle, though subjecting a dealer in bottles to a search-warrant.

APPEAL from the Supreme Court. Mullins, a junk-dealer in the city of New York, was proceeded against, before a magistrate of that city, under a complaint that he had in his possession, secreted, a number of bottles which were stamped with the name of one Knebel, the complainant, who was engaged in the manufacture, bottling and vending of soda-water, ale, cider, &c., and that such bottles were "being sold, disposed of, bought and trafficked in by said Mullins." A search-warrant was issued, and the officer charged with its execution naving found one bottle stamped with Knebel's mark on

Mullins' premises, he brought the latter before the magistrate, as directed by the warrant. The evidence, in addition to the formal proof that Knebel had filed the requisite descriptions of his mark, and had given notice thereof in two newspapers, was that of the constable, who testified that he "found the bottle at the bottom of a barrel where there were one hundred bottles or more of different marks;" that "the barrel stood in a yard where there were three or four thousand bottles, and the defendant was a junk-dealer selling second-hand bottles." The magistrate convicted the defendant and imposed a fine upon him of fifty cents, in default of payment of which he was committed to jail for fifteen days. The defendant having sued out a *certiorari*, the proceedings, including the evidence, were returned to the Supreme Court, which, at a general term in the first district, reversed the conviction, and an appeal was brought to this court.

*T. T. C. Buckley*, for the appellants.

*J. Paulding*, for the respondent.

SELDEN, Ch. J. It must be conceded that the statute under which the respondent was convicted before the justice is peculiar in its provisions, and bears palpable evidence upon its face of having been framed without that care and caution which should attend the enactment of a penal law. The respondent insists that the act is unconstitutional. This, however, depends, in a great degree, upon the construction which is given to it. The first section, which simply authorizes all persons engaged in the manufacture and sale of mineral waters, &c., in bottles with names or marks thereon, to record and publish such names or marks, is, of course, without objection.

The second section, as amended by the act of 1860, declares it to be unlawful, without the written consent of the owner, "to fill with mineral waters, or other beverage, any such bottle so marked or stamped, or to sell, dispose of, buy or traffic in, any such bottles so marked or stamped by him, her or them

of such owner thereof;" and imposes a penalty of fifty cents for every violation of the enactment. This section is very awkwardly framed, and would, if literally construed, be entirely self-destructive. It could not, of course, have been intended to require the owner of the bottle to procure his own written consent to its use or sale. This would be absurd. The manufacturer, for whose protection the statute was passed, might clearly fill his bottles, and sell them, with their contents, without any written consent from himself. When he has done this, the purchaser becomes "the owner" of the bottle, and is, therefore, according to the terms of the act, the party whose written consent is requisite to any subsequent use or sale. But his written consent could be no more essential to a sale by himself, than that of the manufacturer to the original sale; nor would it afford any protection to the manufacturer to require it. This, therefore, cannot be the true construction of the provision.

The only mode in which the statute can be made to effect the object of its enactment is, to interpret the word "owner" as referring exclusively to the original owner whose name or mark is upon the bottle; and the prohibition to extend only to a use or sale by, or a purchase from, a person other than such original owner. Thus interpreted, the provision is entirely unobjectionable, and would accomplish precisely what the legislature no doubt intended.

But, to warrant conviction and punishment under this section, the offence must be proved. The record in this case shows that Mullins was convicted by the justice of having violated the provisions of the act, in having "secreted" the bottle, marked and stamped as described, upon his premises, and in having "sold, disposed of, bought or trafficked" in the bottles of the complainant. Now it is plain that the secreting of bottles cannot subject a party to a conviction under the act. It authorizes the issue of a search-warrant for the purpose of finding the bottles; but no other penalty is attached to the act of secreting. This act is not mentioned or alluded to in the second section, which alone imposes the penalty. To

justify the imposition of a fine or imprisonment, the party charged must be shown to have violated the provisions of this section. Mullins was convicted under those provisions of having "sold, disposed of, bought or trafficked in" the bottles of Knebel. The only evidence to support this conviction was the fact that one bottle with Knebel's mark was found at the bottom of a barrel of bottles upon his premises, and that he was a dealer in old bottles. If this could be supposed to prove either of the acts with which he was charged, it must be that of having unlawfully bought the bottle. It could not prove that he had sold or trafficked in the bottles of Knebel, as it had no tendency to show that he ever had any other in his possession than the one found. But how could the fact of the finding of this bottle upon his premises prove that he had bought it of some person other than Knebel himself, which, upon our construction of the act, it was essential to establish? The presumption provided for in the first clause of the third section of the act does not arise, as that attaches only upon proof of the use of the bottles for the sale of mineral waters; and of this there was no evidence. At common law the presumption from the facts proved would clearly be that Mullins came lawfully into possession of the bottle. Hence, although, in view of the interpretation which I have given to the statute, there is no objection to its constitutionality, still I see no evidence in the case upon which the conviction can properly rest; and the only doubt which can exist as to the propriety of its reversal by the Supreme Court arises, as I think, upon the question whether the error can be corrected upon a *certiorari*, issued, not pursuant to any statute, but under the established practice at common law.

An impression has prevailed to some extent in this State, founded upon several decisions of our late Supreme Court, that the power of review upon a common-law *certiorari* is confined, to use the language of Judge BRONSON, in the case of *The People* v. *The Judges of Dutchess* (23 Wend., 360), "to questions touching the jurisdiction of the subordinate tribunal, and the regularity of its proceedings." "If," adds that learned

Mullins *v.* The People.

judge, "they neither exceed their powers, nor depart from the forms prescribed to them by law, their decision upon the merits of the controversy before them is final and conclusive." This has never, I think, been very cordially assented to; and, from my examination of the subject, it seems to me clear that, at least in that class of cases where the writ is used to remove a summary conviction had before a magistrate under a penal statute, the doctrine is erroneous. It is true, as has been often said, that such a *certiorari* removes only the record; and hence it seems to have been inferred that the evidence upon which the conviction was had would not be returned. But it will be found to have been conclusively settled at common law that the magistrate in these cases must insert the evidence in the record of the conviction itself, for the express purpose of enabling the superior court, upon a removal of the proceedings by *certiorari*, to determine upon the face of the conviction whether it was lawful; and although the court would not interfere upon a question as to the mere weight of the evidence, yet a conviction without any evidence to support it has always, in the English courts, been reversed or quashed as erroneous.

I will refer to a few cases to show that this has been the practice of those courts. In the case of *Rex* v. *Theed* (2 Stra., 919), a conviction by a magistrate under a statute called the "candle act" was quashed, "because the evidence was not set out, it being alleged that the offence was *fully and duly proved.*" The report of this case is very short, and does not show how the question was brought before the court; but it was undoubtedly by *certiorari*, as is plainly to be inferred from a previous case against the same defendant upon the same statute (2 Lord Raym., 1375), in which the conviction was sustained.

In a subsequent case, to wit, *Rex* v. *Lloyd* (2 Stra., 996), in which a *certiorari* was issued to a Court of Quarter Sessions to bring up the proceedings upon a removal of a clerk of the peace from office, a distinction was taken between a conviction and a mere order; and it was conceded, both by the counsel (Mr. Strange) and the court, that, in cases of summary con-

viction, the record must contain the evidence in order that the superior court may see that the conviction was legal. The chief justice said: "It is fully settled, that, in *convictions*, the evidence must be set out; and, if this was to be considered as a conviction, it therefore would be bad."

In *Rex* v. *Clarke* (8 Term, 220), the Court of King's Bench expressly held, that, upon a conviction of a person for killing game, without being duly qualified, the magistrates ought to state in the conviction the whole of the evidence for and against the defendant. The object of this requirement, and the extent to which the court will go in reviewing the case upon the merits, is shown by the case of *Rex* v. *Smith* (8 Term, 588). The defendant had been summarily convicted under a statute of George III against selling bread by wholesale, before it had been baked for twenty-four hours; and this conviction was removed into the King's Bench, no doubt by a common-law *certiorari*, as that was the ordinary if not the only mode of removing such convictions. It was then held, that, where a power of conviction is given by statute to a magistrate, he is the sole judge of the weight of the evidence; but that, if no evidence appear on the conviction to support a material part of the case, the conviction will be quashed.

The same principles were recognized in the case of *The King* v. *Crisp* (7 East., 389), and *The King* v. *Chandler* (14 id., 267), in which convictions before justices of the peace — in the one case under the malt act, and in the other for an offence against the excise laws — were removed in like manner to the King's Bench. In each of these cases, the principal question raised and discussed in the latter court was, whether the evidence was sufficient to support the charge.

Many other authorities might be cited; but these are sufficient to show that, upon a common-law *certiorari* for the removal of summary convictions before magistrates, the power of review is not confined to questions affecting either the jurisdiction of the magistrate or the regularity of the proceedings before him, but extends to all other legal questions; and that, unless it appears upon the face of the record that there

was evidence sufficient to warrant the conviction, it will be quashed.

It follows from what has been said, that the judgment appealed from in this case should be affirmed.

DAVIES, ALLEN, GOULD and SMITH, Js., concurred in this opinion; SUTHERLAND, J., was for affirmance, on the ground that the act is unconstitutional; DENIO, J., dissented.

Judgment affirmed.