PREST–O–LITE CO. v. AUTO ACETYLENE LIGHT CO.

(Circuit Court, N. D. Ohio, E. D. October 7, 1910.)

No. 2,135.

TRADE-MARKS AND TRADE-NAMES (§ 72*)—UNFAIR COMPETITION—RECHARGING ACETYLENE GAS TANKS.

The recharging by defendant of acetylene gas tanks made and sold by complainant for use on automobiles, when brought to defendant by the owners for that purpose, or the exchanging of such recharged tanks for empty ones, in each case placing a label thereon showing by whom the recharging was done, *held* not to constitute unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 83; Dec. Dig. § 72.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Suit by the Prest-o-Lite Company against the Auto Acetylene Light Company. Decree for defendant.

Winter & Winter, for plaintiff.

Calfee & Fogg, for defendant.

TAYLER, District Judge. I think that an analysis of this comparatively simple and uncomplicated situation leads to a clear conviction

as to what are the rights of the parties here, and I might just as well dispose of it under the conviction that comes to me now, assuming that I understand the facts upon the strongest claim that can be made for the complainant.

The complainant manufactures what it calls "Prest-o-Lite gas tanks," which it makes of copper or some other metal that can be so shaped as to sustain very high pressure, with suitable valves and connections, and with a filling of asbestos of a certain degree of porosity and the addition to the asbestos of a certain chemical substance of fairly constant quality and life, which is called "acetone," and then, in order to get the effective gas to be used for lighting automobiles, this tank, thus equipped, is filled with acetylene under certain pressure. This it is which furnishes the gas.

This gas is supposed to be sufficient in quantity to burn two lamps 40 hours (that is the claim of the complainant), so that within 40 hours of use the tank must be recharged. Ordinarily the recharging consists merely in the refilling of it in the proper way, under pressure, with acetylene gas. I state the facts, and believe they are substantially accurate. The time may come when the acetone may require some attention. Necessarily it would not require it at every recharging.

Now the Prest-o-Lite Company sells its tanks with the understanding that whenever the gas is exhausted the owner of one of these tanks may take it to a Prest-o-Lite station, or any person who represents the Prest-o-Lite Company in that respect, and receive, upon the payment of a certain sum, in exchange for the discharged Prest-o-Lite tank, another charged Prest-o-Lite tank. The next person who comes along after this person with the discharged Prest-o-Lite tank may get the last person's discharged Prest-o-Lite tank, which in the meantime has been recharged, and so the business is carried on by the Prest-o-Lite people of charging and recharging tanks. It is a matter, in view of the permanent quality of the construction, of no concern, comparatively speaking, how old the tank is, so long as it is in condition to take the acetylene, because the life is practically unlimited, except as to the contents of the tank and the valve connections

Now, in this situation of affairs, the defendant holds itself out as willing to and does receive discharged Prest-o-Lite gas tanks from owners of them, and in return gives to the person who thus turns in discharged tanks recharged tanks, on such terms as may be agreeable to the parties, and the gas tank which it turns over to the person who wants to make an exchange is placarded with a red label, say three by five inches, upon which appears the legend,

"This tank is charged with acetylene, and was compressed by the Auto Acetylene Light Company, Cleveland, Ohio. Not represented to be the same as the gas with which this tank was originally filled."

The last sentence of this legend is not the most conspicuous, yet it is easily read. Now, it is this conduct of defendant which complainant seeks to enjoin, asserting that it is unfair trade and competition, and that it interferes with its rights. Have I stated the question?

(Mr. Winters asked to have something said about dealers.)

Now, is this unfair trade? The thing that is dealt with is called by the manufacturer a tank, a Prest-o-Lite gas tank. It is undoubtedly just as much a Prest-o-Lite tank, if it has not any acetylene in it, as if it is filled with acetylene—just as much as a bottle is a bottle, whether it be empty or full. Acetylene is itself a simple matter, and its quality is not discussed here, and the fact that one person may furnish acetylene of another quality than that furnished by some one else is not made the subject of the complaint, even if it were true that one acetylene could be different from another, which, of course, chemically it could not be.

Now, what does the defendant do? Somebody brings a tank to its place of business upon which is the plate, "Prest-o-Lite Gas Tank, manufactured by the Prest-o-Lite Company." That is just as true when it is discharged and brought to somebody to be recharged as it was the day it was shipped from the factory charged, a Prest-o-Lite gas tank. The defendant recharges it. That costs a small sum, compared to the value of a new tank equipped and charged; that is to say, the charging adds but little—the charging with acetylene. And it would probably be an outrage on the rights of the complainant for the defendant on its own motion to take the plate off and pass off on the community as its own the tank of the Prest-o-Lite Company's manufacture, because in all material respects as a gas tank they have denied to the manufacturer the credit for that gas tank by merely putting in it recharges of acetylene.

Acetylene is something which everybody wants to get for lighting the headlights of his automobile. The question is how it can be procured with the most convenience and safety, and so as to furnish the best light for the forward part of the automobile; and this tank does it—serves the demand. In order that there may be no error or misapprehension of the truth about it, the defendant pastes this label on the tank. I do not know whether it was shown that this was being done at the time the bill was filed or since; but, at all events, a practical statement of the case is that the defendant pastes a label on the tank which negatives the idea that the Prest-o-Lite Company charged it. So that no deception is practiced on any person who does such an unimportant thing to an automobile as to exchange the acetylene tank, for the label is there before his eyes, and if he does not read it he cannot claim that he was deceived.

But I do not attach so much importance to that label, although it ought to be there. I mean by that that the exchange of the acetylene tank on an automobile is not like buying a fountain pen, or loaf of bread, or some other thing of ordinary commerce, for a man never has but one of them at a time; that is, one on each vehicle at a time. Now, when the acetylene is exhausted, if he has a Prest-o-Lite tank, and it has been filled with acetylene furnished or put into this tank by some Prest-o-Lite concern, he takes it some place where he has heard that it can be refilled. He is perfectly deliberate about it, and can find out, if he wants to, if that is a Prest-o-Lite station or not, and whether they can fill it with acetylene gas which will be sufficient

for his use; and he very deliberately gets the other one back, and, even though he does not know anything about it when he makes the exchange, he can find out, when he gets the new one back, whether it is a Prest-o-Lite tank or not.

The statement that this label may come off is, of course, true, and that is what ought to happen, because, theoretically and practically, unless the man returns constantly to the same place, a new label ought to be put on each time the tank is recharged, if it is recharged by another than a Prest-o-Lite concern.

But I gather that the complainant contends that the defendant is unlawfully interfering with its business, not so much because it amounts to an injustice to the purchaser, for it does not and cannot work injustice to a purchaser who does it voluntarily, but because it is an interference with the complainant's method of doing business. Assuming that the complainant has made the most of its evidence as to deception, it is not only meager, but trivial. Nobody ever seems to have been deceived or hurt by the conduct of the defendant. What the complainant really seeks to do is to establish a monopoly in its gas tanks. Well, now, there is no legal objection to a monopoly which arises out of a patent, for it is in its very nature a monopoly; but that cannot arise by interfering with the freedom of some individual who owns a tank to go anywhere he pleases and get his tank exchanged for another tank, unless in the operation of the exchange that person is deceived, and through such deception some reflection is cast upon the Prest-o-Lite Company's tank. That is the only way by which the Prest-o-Lite Company can get into this matter.

I am clearly of the opinion that the bill ought to be dismissed.