PREST–O–LITE CO. v. AMERICAN AUTO SUPPLY CO.

(Municipal Court of City of New York, Borough of Manhattan, Ninth District. January 28, 1913.)

1. TRADE-MARKS AND TRADE-NAMES (§ 24*)—REGISTRATION—STATUTORY PROVISIONS.

A manufacturer of acetylene gas sold in marked receptacles, which registered and published its trade-mark as required by Domestic Commerce Law 1896 (Laws 1896, c. 376) § 28, protecting the trade-names of any beverage, medicine, perfumery, or mixture put up in any vessel or receptacle, was not entitled to recover the penalty thereunder, when that act is construed in the light of the history of the legislation upon the subject, since the word "mixture," in that section, is limited to mixtures of the same kind as the special articles mentioned.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 27; Dec. Dig. § 24.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 42*)—REGISTRATION—STATUTORY PROVISIONS.

Nor is such manufacturer entitled to recover the penalty imposed by General Business Law (Consol. Laws, c. 20) § 367, protecting the registered trade-mark of any person engaged in manufacturing, etc., any article of merchandise put up in any bottle, vessel, box, package, or other receptacle with his name and trade-mark thereon, where the manufacturer did not

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

register its trade-mark subsequent to the passage of that act, since the act could not be given a retroactive effect.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 47; Dec. Dig. § 42.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 42*)—REGISTRATION—STATUTORY PROVISIONS.

General Business Law (Consol. Laws, c. 20) § 366, providing that any person who had registered his trade-mark under sections 360 and 361, which provided that the manufacturer of certain named beverages, medicines, etc., or compounds or mixtures in bottles, syphons, tins, or kegs, who had registered his trade-mark prior to the adoption of that law, need not file it again, does not validate a filing in 1908 by a manufacturer of acetylene gas sold in tanks bearing his trade-mark which would be protected by Business Law 1909, § 357, since the words "compound or mixture," in sections 360 and 361, refer only to those similar to the named articles, and the container does not come within the description of bottle, syphon, tin, or keg.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 47; Dec. Dig. § 42.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 42*) — STATUTES — CONSTRUCTION — PENAL STATUTE.

General Business Law (Consol. Laws, c. 20) § 360, imposing a penalty upon one who sells articles in a vessel bearing the trade-mark of another manufacturer, must be strictly construed as a penal statute.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 47; Dec. Dig. § 42.*]

Action by the Prest-O-Lite Company against the American Auto Supply Company. Judgment directed for the defendant.

Winter & Winter, of New York City, for plaintiff.

Louis Lande and Jacob Landy, both of New York City, for defendant.

SPIEGELBERG, J. This action is brought to recover a penalty under section 367 of article 24 of the General Business Law (Laws of 1909, c. 25, being chapter 20 of Consolidated Laws). The plaintiff is a manufacturer of acetylene gas which is dissolved in acetone and then filled in tanks for use in automobiles. The tanks to the number of over 800,000 are likewise made by the plaintiff. They are nickel plated or copper plated, and are of different sizes. Each tank bears the word "Prest-O-Lite" which the plaintiff claims as a trade-mark. On October 16, 1912, the defendant refilled one of these copper tanks having a capacity of 40 cubic feet, with gas manufactured by the Searchlight Gas Company, and sold the contents thereof to one of the plaintiff's employés. Before doing so, the defendant pasted over the word "Prest-O-Lite" a label conveying the information that the re-filled tank contained Searchlight gas and not Prest-O-Lite gas.

I have come to the conclusion that the plaintiff is not in a position to maintain this action for the reason that it has not filed or published a description of the trade-mark as required by section 367 of the General Business Law subsequent to the enactment of that section, which was added to the Consolidated Laws by Laws of 1909, c. 475, on May 25, 1909. The fact that on April 1, 1908, the plaintiff filed in the office

of the Secretary of State and in the office of the clerk of Queens county a description of the name Prest-O-Lite and published the name once a week for three successive weeks in a newspaper published in Queens county does not avail the plaintiff.

Before examining the statutes pertinent to this case in force in the year 1912, I shall briefly trace the history of trade-mark legislation in this state, as I believe it will be helpful towards a better understanding of the existing law. It appears that the first enactment was made in 1847 by chapter 207. As this statute was the first attempt of the Legislature to deal with the subject, and in its essential features, though with considerable modifications, has remained the type of all subsequent legislation, it may be well to quote it in full. It reads:

"Section 1. All persons engaged in the manufacture, bottling, or selling of soda and mineral waters, porter, ale, cider or small beer in bottles with their names or other marks stamped thereon, may file in the office of the secretary of state, and of the clerk of any county in which such articles may be bottled or sold, a description of the names and marks so used by them, and cause the same to be printed for six weeks successively, in a weekly newspaper, published in such county, except the city and county of New York, where such publication shall be made for the same term in two daily newspapers published in said city.

"Sec. 2. It shall not be lawful for any person to sell any bottle marked or stamped as described in the first section of this act, and every person so offending shall be liable to a penalty of fifty cents for every bottle so sold, for the first offense; and five dollars for every bottle subsequently sold, to be recovered by the person whose name or mark shall be stamped on the bottles so sold, and who shall have complied with the provisions of the first section of this act; and any bottle dealer, or keeper of a junk-shop, who shall purchase such bottles from any person, shall be liable to the penalties above named, for every bottle so purchased."

The second section of this statute was amended by Laws of 1860, c. 117, which made the refilling of bottles unlawful and added features as to presumptive evidence of the unlawful use and the issuance of search warrants by magistrates, but no additions were made to the character of the protected property. It also eliminated the recovery of the prescribed penalties by the aggrieved party. The statute of 1847 as amended by the statute of 1860 was construed and upheld as constitutional in Mullins v. People, 24 N. Y. 399, though the court was of the opinion that it was "framed without that" care and caution which should attend the enactment of a "penal law." It may be stated without impropriety that there are other instances where the legislative efforts concerning trade-marks are subject to the same criticism of lack of "care and caution." The statutes of 1847 and of 1860 were further amended by Laws of 1885, c. 467 and chapter 468, by adding milk and cream to the beverages. Notwithstanding the amendment of the Laws of 1847 and 1860 by the act of 1885, it seems that prior thereto they were to a great extent superseded by Laws of 1875, c. 303, which accorded protection to persons "engaged in the manufacture, bottling, packing in boxes, baskets or casks, or in the sale of soda waters, mineral waters, porter, ale, cider, ginger ale, small beer, lager beer, white beer, or other similar beverages in siphons or bottles packed in boxes, baskets or casks, or unpacked with their names or other marks or devices" contained on such receptacles, against the filling, defacing or

unauthorized selling thereof, and provided that the offenders shall be "guilty of a misdemeanor and shall forfeit to the party aggrieved a sum not exceeding twenty-five dollars for each and every offense." This statute makes the penalty recoverable by the aggrieved party, a feature contained in the statute of 1847, and at the same time declares a violation to be a misdemeanor. The statutes of 1847, 1860, and 1875 were repealed by Laws of 1886, c. 593, § 1. Although the statute of 1885 was not expressly repealed until 1909 (chapter 25, § 400), it was practically superseded by Laws of 1887, c. 377, hereinafter referred to.

While the act of 1847 and the acts amendatory thereof dealt with. bottles only, protection of private marks on casks of manufacturers of malt liquor was given by Laws of 1864, c. 276. The articles therein mentioned are "butts, hogsheads, barrels, half-barrels, casks, half-casks, quarter casks or kegs." It contained similar features as to registration and publication and makes a violation of the act a misde-meanor punishable by fine and imprisonment. The statute was made applicable only to the counties of New York, Albany, and Kings, but this restriction was removed by Laws of 1874, c. 532. The statute of 1864 was amended by. Laws of 1886, c. 417, but only those sections. dealing with the punishment of the violation and the proof thereof and the issuance of search warrants by the magistrates. I have made no reference to other statutes of a purely penal character, such as Penal Code, § 369, as amended by Laws of 1882, c. 384, although they. contain some provisions similar to those herein discussed.

These several statutes left the entire subject in a very unsatisfactory and confused condition. As a remedy, the so-called Bottling Act of 1887 was enacted (Laws of 1887, c. 377) to replace all statutes theretofore passed. It provides, among other things, for registration and publication of trade-names or trade-marks by manufacturers of or dealers. in "soda waters, mineral or aerated waters, porter, ale, beer, cider,. ginger ale, milk, cream, small beer, lager beer, weiss beer, white beer or other beverages in bottles, siphons or kegs."

In 1888 the scope of protected articles was enlarged by adding the words "or medicines, medical preparations, perfumery, compounds or mixturs," after the words "or other beverages." Laws of 1888, c. 181. The bottling act contains detailed provisions against the unlawful. use of trade-marked articles and declares any person offending against the provisions of the act guilty of a misdemeanor punishable by fine and imprisonment. The constitutionality of the Bottling Act of 1887, as amended in 1888, was upheld in People v. Cannon, 139 N. Y. 32,. 34 N. E. 759, 36 Am. St. Rep. 668.

A radical innovation was made by section 28 of the Domestic Commerce Law (Laws of 1896, c. 376). It deals with trade-names of "any beverage, medicine, perfumery or mixture in this state, put up * * * for sale in any vessel or receptacle." A purely civil remedy is provided. An offense against the statute is not made a misdemeanor, nor is it even, in so many words, declared to be unlawful. It provides that "any person violating any provision of this section shall forfeit to such proprietor one hundred dollars for each such violation." The Domestic Commerce Law, by section 110, specifically repeals chapter 276. of Laws of 1864 and chapter 417 of Laws of 1886 as well as the Bottling Act of 1887 and 1888. As such repeal left a civil remedy only.

the mistake was immediately corrected by the re-enactment of the Bottling Act by chapter 933 of Laws of 1896. The only change was to add "oils" to the other articles. At this point attention may be called to a lapse of the Board of Statutory Consolidation contained in their report to the assembly of June 26, 1907, where they say (at page 2070):

"Article 24. Trade-Marks. In the original Domestic Commerce Law there was a single section (28) relating to trade-marks. L. 1896, c. 933, passed at the same session as the Domestic Commerce Law, was an amplification of the law of trade-marks as to certain articles and treated of the same subject-matter as section 28 of the Domestic Commerce Law, but was not superseded thereby. See Statutory Construction Law, § 33. The statute mentioned superseded the provisions of Domestic Commerce Law, § 28, so far as inconsistent, and has accordingly been consolidated in General Business Law."

Section 28 and chapter 933 do not deal with the same subject-matter. The one provides a civil remedy, the other a penal. Section 933 is a re-enactment of an old statute, not an amplification of the law of trade-marks. On the contrary, the phraseology of section 28, both as to the articles and the receptacles, is more comprehensive than the specific enumeration in chapter 933.

In 1904, by chapter 548 the trade-mark law was extended to "ice cream, confectionery, charlotte russe, cakes, and jellies."

Chapter 933 of Laws of 1896 and chapter 548 of Laws of 1904 were consolidated in the General Business Laws of 1909 (Consol. Laws, c. 20), forming sections 360 to 366 of article 24 thereof. All the statutes hereinabove discussed, including all of the Domestic Commerce Law of 1896, were expressly repealed by section 400 of the General Business Law, so that when that act went into effect on February 17, 1909, the only statute law on the subject consisted substantially in the re-enactment of the two statutes of 1896 (chapter 933) and 1904 (chapter 548).

[1] The learned counsel for the plaintiff claims that when on April 1, 1908, it registered its trade-mark and subsequently published it in accordance with section 28 of the then existing Domestic Commerce Law, it became entitled to the benefits thereof. As the plaintiff seeks the recovery of a penalty in a civil action, only that act comes into consideration, and not chapter 933 of Laws of 1896. I do not believe that the designation of "any beverage, medicine, perfumery or mixture" used in section 28 includes acetylene gas. Under the doctrine of ejusdem generis, referred to below, "Mixture" must be construed as applying to one of the specified articles mentioned and not to other articles in addition to beverages, medicines, and perfumeries.

[2] But assuming that acetylene gas was protected in 1908 by the Domestic Commerce Law then in force, section 28 was repealed by section 400 of the General Business Law. The right of the plaintiff to maintain this action must be tested by the provisions of the General Business Law. Its claim is based on chapter 475 of Laws of 1909 in effect May 25, 1909, which was added as section 367 to the General Business Law. This statute restores the civil remedy given by section 28 of the Domestic Commerce Law, viz., the forfeiture to the proprietor of the trade-mark of $100 for each violation, but is more comprehensive and sweeping in its terms than the

old statute. That part of the statute pertinent to the issues herein reads:

"Any person or corporation engaged in manufacturing, packing, bottling or selling any article of merchandise, put up by him for sale in any bottle, vessel, box, package or other receptacle, with his name, trade-mark, label or private mark appearing in any way thereon, or branded, stamped, affixed, blown or impressed thereon, may file in the office of the Secretary of State and in the office of the county clerk. * * * "

[3] Then follow the provisions as to registration and publication. The plaintiff neither filed nor published its trade-name subsequent to the passage of the act, and it stands to reason that no retroactive force can be given to it. However, the plaintiff maintains that it is entitled to the benefit of this act by virtue of section 366 of the General Business Law, which reads:

"Any person or corporation that has heretofore filed in the offices mentioned in sections three hundred and sixty or three hundred and sixty-one, a description of the name or names, marks or devices upon his or its property, therein mentioned, and has caused the same to be published according to the law existing at the time of such filing and publication, shall not be required to again file and publish such description to be entitled to the benefits of this article."

The substance of this saving clause appears in Laws of 1887, c. 377, and is also found in Laws of 1888, c. 181, Laws of 1896, c. 933, and Laws of 1904, c. 548. The purpose of the clause is obvious. It was remedial legislation to give relief to owners of trade-marks which by successive amendments were added to the protected list, but who had prior to such amendments filed their trade-marks without at the time having the benefit of the then existing laws. If section 366 is applicable to "any article of merchandise" mentioned in section 367, the plaintiff's contention is correct. But such is not the case. Whereas the language similar to that of section 366 in the prior statutes covers the property added by the respective statutes, in this case it is restricted to that mentioned in section 360 and section 361 of article 24 of the General Business Law. Section 361, which deals with the articles mentioned in Laws of 1904, c. 548, has, of course, no application to this case. The property mentioned in section 360 (being the same as in the Laws of 1896, c. 933) is:

"Soda waters, mineral or acrated waters, porter, ale, beer, cider, ginger ale, milk, cream, small beer, lager beer, weiss beer, white beer or other beverages or medicines, medical preparations, perfumery, oils, compounds or mixtures, in bottles, siphons, tins or kegs."

The plaintiff does not claim that acetylene gas dissolved in acetone is one of the articles specifically mentioned, but contends that it is a compound or mixture within the meaning of the statute. Granting for argument's sake that it is a compound or mixture, it is quite clear that only compounds or mixtures of the articles specifically enumerated are within the contemplation of the statute. The maxim of noscitur a sociis or ejusdem generis applies.. In Matter of Hermance, 71 N. Y. 481, the court says, at page 487:

"It is said to be a good rule of construction that, 'when an act of Parliament begins with words which describe things or persons of an inferior degree, and concludes with general words, the general words shall not be ex-

tended to any thing or person of a higher degree.' That is, 'when a particular class is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters ejusdem generis with such class.' Archb. of Canterbury's Case, 2 Coke, 46a; Lyndon v. Stanbridge, 2 K. & N. 51; Reg. v. Edmundson, 2 E. & E. 83; Gibbs v. Lamen, 30 L. J. Ch. 170; Broom's Legal Max. 625."

In People ex rel. Kinney v. White, 64 App. Div. 390, 72 N. Y. Supp. 91, it is said:

"By a well-settled principle of statutory construction, when a particular class is spoken of and general words follow, the class first mentioned is to be treated * * * as referring to person ejusdem generis with such class."

See, also, People v. N. Y. & Manhattan Beach Ry. Co., 84 N. Y. 566, 569; People v. Richards, 108 N. Y. 137, 148, 15 N. E. 371, 2 Am. St. Rep. 373; and Burks v. Bosso, 180 N. Y. 341, 344, 73 N. E. 58, 105 Am. St. Rep. 762. The rule is stated in Endlich on Interpretation of Statutes, § 405, as follows:

"The general word which follows particular and specific words of the same nature as itself takes its meaning from them, and is presumed to be restricted to the same genus as those words; or, in other words, as comprehending only things of the same kind as those designated by them."

In this case the general words "compounds or mixtures," being preceded by words denoting well-defined specific things, must be limited to compounds or mixtures of such specific articles. The intention of the Legislature in adding the words "compounds or mixtures" is quite clear. They first appear in the act of 1888 amendatory to the Bottling Act of 1887, and have been retained in chapter 933 of the Laws of 1896 and in section 360, now under consideration. The Legislature was very careful in specifying with great particularity the protected articles in the several statutes, and when in 1888 it amplified the then existing statute by adding "medicines, medical preparations, perfumery, compounds or mixtures," it did not intend to add compounds or mixtures of all articles not mentioned, but compounds or mixtures of those articles specifically protected. Any other interpretation would be preposterous. Moreover, the acetylene was put up in a copper tank, and the statute (section 360) speaks only of bottles, siphons, tins, or kegs. A copper tank is neither a bottle, nor a siphon, nor a tin, nor a keg.

[4] The statute, being penal in its nature, must be construed strictly, and not extended by implication. As said in Health Dept. v. Knoll, 70 N. Y. 530, at page 536, a "penalty cannot be raised by implication, but must be expressly created and imposed." This rule has been applied time and time again. In the very recent case of City of New York v. Fredericks, 206 N. Y. 618, at page 623, 100 N. E. 419, at page 421, Willard Bartlett, J., writing for the court, says:

"Penal ordinances, like penal statutes, are to be construed strictly, but yet not so as to defeat the obvious intent of the lawmakers. In no event can the court resort to implication to read into a penal ordinance a prohibition which is not expressed therein. In the clause of the ordinances under consideration there is no express provision forbidding the sale of meat or provisions by the jar, as the defendant sold his bacon. Such a provision cannot be inserted by implication into an ordinance of this character."

The effect of the legislation of 1909 is that the civil remedy is available to all owners of trade-marks of any article of merchandise put up in any receptacle provided they have filed and published the trade-marks subsequent to May 25, 1909, pursuant to section 367 of the General Business Law, and the penal remedy applies to owners of articles mentioned in sections 360 and 361 without the necessity of again filing or publishing, provided they have theretofore complied with the statute in that respect.

In view of these conclusions, it is unnecessary to discuss the other interesting and novel points involved in this case, and judgment must be directed for the defendant.