PREST–O–LITE CO. v. RAY et al.

(Municipal Court of City of New York, Borough of Manhattan, First District.
April 28, 1913.)

1. TRADE-MARKS AND TRADE-NAMES (§ 50*) — OFFENSES — SALE OF LABELED
PACKAGE.

General Business Law (Consol. Laws, c. 20) § 367, imposes a penalty
upon any one other than the proprietor who should sell any receptacle be-
longing to the proprietor which was branded or marked with a registered
trade-mark. A manufacturer of acetylene gas stored it, dissolved in
acetone, in a steel receptacle, and sold the full receptacle for $25, but
upon return of the empty receptacle furnished another full one for $1.50.
The manufacturer had registered its trade-mark for the gas dissolved in
acetone and stored in the vessels, but both the gas and the receptacle were
known by the trade-name. *Held* that, while the statute protected the
trade-mark of the contents of the receptacle and not of the receptacle it-
self, the fact that the latter was also known by the trade-name and that
its cost was greater than the cost of refilling did not bar a recovery
against one who had sold one of the receptacles filled with gas manu-
factured by another company.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 58; Dec. Dig. § 50.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 50*) — ACTIONS FOR PENALTY — DE-
FENSES.

Even though the second manufacturing company acquired and filled the
tank before the trade-mark had been registered, that fact would not pro-
tect a dealer who sold the tank so filled after the trade-mark was regis-
tered, where there was nothing to show the time the dealer received the
tank from the manufacturer.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 58; Dec. Dig. § 50.*]

3. CONSTITUTIONAL LAW (§ 278*)—TRADE-MARKS AND TRADE-NAMES (§ 42*)—
DUE PROCESS OF LAW—TRADE-MARKED RECEPTACLE.

Even if the dealer had received the filled tank from the second manu-
facturer before the first had registered his trade-mark, he would not be
deprived of his property by the subsequent prohibition of its sale, since a
trade-mark was protected by common law and the statute merely pro-
vided a similar method of proof and imposed an additional penalty, and
since such sale was in violation of Penal Law (Consol. Laws, c. 40) §
2354, making it a misdemeanor to sell an article with a label indicating
the quality, character, etc., of the article but not indicating it truly.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 763,
765, 767–770, 772–777, 779–806, 808–810, 816–824, 907–924, 942; Dec. Dig.
§ 278;* Trade-Marks and Trade-Names, Cent. Dig. § 47; Dec. Dig. § 42.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 50*)—DEFENSES—INTENT.

The fact that the dealer sold the contents of the tank as the gas of the
second manufacturer and not as that of the first is no defense.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 58; Dec. Dig. § 50.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 50*)—DEFENSES—RELABELING.

Nor did the pasting of a label indicating that the gas was manufactured
by the second manufacturer over the trade-mark etched on the tank con-
stitute a defense to an action for the penalty, since such a label could
have been easily removed and was therefore no protection against fraud
so long as the original trade-mark was not defaced.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 58; Dec. Dig. § 50.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Prest-O-Lite Company against Frederick Ray and others. Judgment directed for the plaintiff.

Judgment reversed in 147 N. Y. Supp. 138.

Winter & Winter, of New York City, for plaintiff.

Louis Lande and Jacob Landy, both of New York City, for defendants.

SPIEGELBERG, J. This is an action brought to recover a penalty under section 367 of article 24 of the General Business Law, being chapter 20 of the Consolidated Laws. The plaintiff is a manufacturer of steel receptacles closed at both ends and copper plated, with a needle valve attached at the convex end and a gauge and safety plug at the concave end. The interior is completely filled with porous asbestos, which is saturated with a liquid chemical called acetone into which acetylene gas is dissolved. This mixture of acetylene with acetone has been manufactured for many years by the plaintiff and is known by the name of "Prest-O-Lite." In compliance with the provisions of section 367 of the General Business Law, a description of this trade-name and its uses was filed on December 5, 1912, in the office of the clerk of Queens county (in which county the plaintiff manufactures its gas in this state), and on December 7, 1912, in the office of the Secretary of State, and the same description was published in a daily newspaper of Long Island City in the county of Queens once in each week for three successive weeks beginning December 5, 1912. On the surface of each receptacle or tank containing the acetylene gas is etched in large type the word "Prest-O-Lite" together with other information. The plaintiff's mixture is used to generate the power which lights the headlights of automobiles. Containers or tanks to the number of more than 700,000 have been manufactured by the plaintiff. These tanks with the gas are sold to the public at retail at $25, with the privilege to the purchaser to return the tank when the gas is exhausted to any of the company's agencies and receive in return at an expense of $1.50 another tank fully charged. On January 16, 1913, the defendants, who are dealers in automobile accessories, received an empty "Prest-O-Lite" tank and in exchange sold another tank of the same manufacture filled with gas made by the Searchlight Gas Company. This tank bore a label which covered the legend etched thereon and contained the statement among others that it was refilled with acetylene gas made by the Searchlight Gas Company and not with Prest-O-Lite gas. This information was correct; the contents were made and filled by the Searchlight Gas Company. The plaintiff claims that this act subjects the defendants to the penalty of $100 provided by section 367 of the General Business Law for the violation of the following provision:

"No person other than such proprietor of such label, trade-mark or other private mark which has been filed in the office of the Secretary of State and in the office of the county clerk, as aforesaid, shall sell, keep or offer for sale in, from, or out of, or fill, place or put into, any vessel, box, package, bottle or receptacle on which any such names, labels or marks in any manner appear, and while so branded, stamped, labeled, blown, impressed or marked, any article or substance other than the original contents placed therein by the proprietor of the label, trade-mark or other private marks thereon."

Section 367 was added to article 24 of chapter 20 of the Consolidated Laws by Laws of 1909, c. 475. The plaintiff has heretofore brought actions similar to this one against several defendants under section 28 of the Domestic Commerce Law (Laws of 1896, c. 376); but the writer held, after tracing the history of trade-mark legislation in this state in its various phases, that it could not proceed under that statute, and that its remedy, if any, must be sought in section 367 of the General Business Law. Prest-O-Lite Co. v. American Auto Supply Co. (Municipal Court, Borough of Manhattan, Ninth District, January 28th, 1913), 147 N. Y. Supp. 150.

The arguments of counsel in this case have covered a wide range, and many extraneous matters have been injected into it. I am of the opinion that there is no great difficulty in arriving at a proper solution of the question presented if the facts and the application of the statute thereto be kept in mind. After a thorough examination of the points involved herein, aided by the exhaustive briefs of counsel, I have come to the conclusion that the plaintiff is entitled to judgment herein. I do not deem it necessary to discuss all the contentions raised by the defendants, as I believe that, with the exception of two, they are without merit or beyond the issues in this case.

[1] One of the main points raised by the defendants to defeat plaintiff's cause of action is based upon the argument that the statute covers a trade-mark of the merchandise contained within a receptacle upon the surface of which such trade-mark appears to indicate the source of manufacture of its contents, but does not cover a trade-mark placed upon a receptacle to show the source of its manufacture as an article of merchandise and containing the contents it is designed to contain. I quite agree with this construction of the statute. The protection of the statute applies, as indicated in the opening sentence, to:

"Any person or corporation engaged in manufacturing, packing, bottling or selling any article of merchandise, put up by him for sale in any bottle, vessel, box, package or other receptacle with his name, trade-mark, label, or private mark appearing in any way thereon, or branded, stamped, affixed, blown or impressed thereon."

It is quite apparent that the statute contemplates a trade-mark in reference to an article of merchandise contained within the receptacle and not the receptacle itself. The receptacle serves merely as an identification of the trade-marked contents by having the trade-mark or name placed thereon. This is exactly what was done in this case. The plaintiff in adopting the name of "Prest-O-Lite" designated thereby the product manufactured by it, namely, the acetylene dissolved in acetone which it stored in steel cylinders or tanks. The statute protects Prest-O-Lite gas, and not the tanks containing the Prest-O-Lite gas. The certificate filed and published by the plaintiff pursuant to the statute specifically states:

"That the particular goods for which it (the trade-mark Prest-O-Lite) has been and is intended to be appropriated consists of the said acetylene dissolved under pressure in acetone and stored in said vessels."

The facts in this case bear out the plaintiff's contention in that respect. The thing of value to the public which it sells is not the re-

ceptacle, but the contents thereof. The receptacle itself has no commercial value except to serve as a container of the acetylene gas. The purchaser upon exchange of the exhausted tank receives a tank different from the one he previously had, no matter whether the one which he returned to the plaintiff or its agents was in good condition or not. What the customer buys and what he desires is Prest-O-Lite gas, not the tank containing the gas. The fact that the original cost of the container or the receptacle with the gas is $25, while the price of the contents is only $1.50, cannot be used as an argument in favor of the defendant's contention. The difference in price between the receptacle and its contents may be and is due to other reasons, into which it is not necessary to inquire in this case. Nor is it of any importance that the vessel itself may be known as Prest-O-Lite tank. The manufacturer may use a trade-name which he has acquired upon one of its products, for others manufactured by him, although he may have the protection of the statute only concerning the one for which he has acquired the trade-mark. Thus, in this case, notwithstanding that the statute only covers the trade-name of the acetylene gas, there is nothing to prevent the plaintiff from using the word "Prest-O-Lite" in conjunction with any of its other manufactured articles. The gravamen of this case is not that a receptacle upon which a trade-mark is claimed has been refilled, but that a receptacle on which the trade-mark of its original contents appears was sold after it had been filled with a substance other than the original contents.

[2] The defendants also contend that the enforcement of the penalty provided by section 367 will deprive them of property without due process of law in violation of the federal and state Constitutions. That the Legislature has the right to pass acts similar to the one in question cannot, of course, be denied. The constitutionality of the trade-mark legislation was upheld in Mullins v. People, 24 N. Y. 399; People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 668; and People v. Luhrs, 195 N. Y. 377, 89 N. E. 171, 25 L. R. A. (N. S.) 473. However, from the fact that the Searchlight Gas Company on December 8, 1912, at a time prior to the completion of the publication of the trade-mark notice by the plaintiff, acquired possession of the gas tank which was made the subject of sale herein, it is contended that it had a vested right to do with the receptacle as it pleased; or, in other words, even assuming that the statute in question forbids the refilling of the particular tank with any substance other than Prest-O-Lite gas, the plaintiff is not in a position to maintain this action for the reason that on December 8, 1912, it had not filed and published the description of the trade-mark in accordance with the statute. This action, however, is not brought against the Searchlight Gas Company, but against these defendants; and the defendants are not sought to be held liable for filling the tanks with Searchlight Gas, but for selling the tank thus filled. It does not appear when the defendants acquired the filled tank from the Searchlight Gas Company. If there is any merit to the contention of the defendants, it must affirmatively appear that they (not the Searchlight Gas Company) acquired the tank before

December 19, 1912, when the compliance on the part of the plaintiff with the provisions of the statute had been completed. The failure of such proof is fatal to the defendants' contention.

[3] But even assuming that the defendants became possessed of the tank as filled by the Searchlight Gas Company prior to December 19, 1912, I am of the opinion that their plea is unavailing. It is well settled that no new rights of ownership or property in a trade-mark are created by statutes authorizing the filing and publication thereof. When the federal trade-mark statutes which provided for registration of trade-marks came before the Supreme Court for adjudication, the court said in the Trade-Mark Case, 100 U. S. 82, at page 92, 25 L. Ed. 550:

"The right to adopt and use a symbol or a device to distinguish the goods or property made or sold by the person whose mark it is, to the exclusion of use by all other persons, has been long recognized by the common law and the Chancery Courts of England and of this country, and by the statutes of some of the states. It is a property right for the violation of which damages may be recovered in an action at law, and the continued violation of it will be enjoined by a court of equity, with compensation for past infringement. This exclusive right was not created by the act of Congress, and does not now depend upon it for its enforcement. The whole system of trade-mark property and the civil remedies for its protection existed long anterior to that act, and have remained in full force since its passage."

Section 367 of the General Business Law does not grant the owner of trade-marks any additional property, but merely provides a simpler method of proof, and gives the owner of the trade-name an additional remedy. The selling of articles other than the trade-marked articles in or from packages or receptacles containing the trade-mark of such articles was illegal before the passage of section 367. The owner of the trade-mark had his remedies against the infringer either at common law or in equity. This has been held, irrespective of any statutory enactment, in a case in the Circuit Court for the Northern District of New York, where this very plaintiff was complainant. Prest-O-Lite Co. v. Avery Lighting Co. (C. C.) 161 Fed. 648. The case of the Prest-O-Lite Co. v. Auto Acetylene Light Co., 191 Fed. 90, decided in the Circuit Court for the Northern District of Ohio, Eastern Division, is not an authority to the contrary. In that case the court was of the opinion that the trade-name of Prest-O-Lite was applied to the tank and not, as in this case, to the contents. This is apparent from the following quotation:

"The thing that is dealt with is called by the manufacturer a tank, a Prest-O-Lite gas tank. It is undoubtedly just as much a Prest-O-Lite tank, if it has not any acetylene in it, as if it is filled with acetylene—just as much as a bottle is a bottle, whether it be empty or full."

The statute in question safeguards the property rights of the purchaser of the receptacle by providing that:

"Nothing herein contained shall be construed as preventing the traffic in any bottles or other receptacles without contents, with or without obliteration or defacement of the trade-mark upon it, when such trade-mark can be obliterated or defaced without substantial injury to the bottle or receptacle; the in-

tention of this section being to protect the owners of trade-marks and labels against imitation and refilling of all packages and receptacles while bearing such trade-mark."

But disregarding the common-law rights of the plaintiff to protection of its trade-name, the statute law of this state even prior to the enactment of the General Business Law prohibited what the defendants did in this case. I refer to chapter 45 of the Laws of 1899 as amended by Laws of 1908, c. 427, and Laws of 1909, c. 240, § 60, now known as Penal Law, § 2354 (chapter 40 of the Consolidated Laws). Subdivision 5 of section 2354 of the Penal Law provides that a person is guilty of a misdemeanor, who—

"makes or sells, or offers to sell, or dispose of, or has in his possession with intent to sell or dispose of, an article of merchandise with such a trade-mark or label as to appear to indicate the quantity, quality, character, place of manufacture or production, or persons manufacturing, packing, bottling, boxing or producing the article, but not indicating it truly."

I think it is apparent that the defendants violated this provision. The tank contained Searchlight gas, notwithstanding the inscription etched thereon indicating Prest-O-Lite gas. In People v. Luhrs, supra, the defendant was convicted for selling certain drinks upon a request for Wilson whisky from a Wilson whisky bottle bearing the trade-mark of the Wilson Distilling Company. He then refilled the bottle and sold other drinks upon request for Wilson whisky from the same bottle after it had been refilled by him. There was no proof whether the liquor with which he refilled the bottle was Wilson whisky or not. Mr. Justice Clarke, writing the opinion for the Appellate Division (127 App. Div. 634, 111 N. Y. Supp. 749), very tersely says:

"Selling whisky which is not Wilson whisky in or from a bottle bearing the Wilson trade-mark is prohibited."

Paraphrasing this remark, it is just as true that selling acetylene gas which is not Prest-O-Lite gas in a bottle bearing the Prest-O-Lite trade-mark is prohibited. Similar attacks upon the constitutionality of the act were made as are now made in this case; but they were swept aside by the Appellate Division and by the Court of Appeals. In the Appellate Division at page 637 of 127 App. Div., page 751 of 111 N. Y. Supp., it is said:

"That argument, carried to its logical conclusion, would destroy all the statutes providing for the protection of trade-marks. Why should not a man be allowed to use his property as he will, to use any trade-mark, to affix a well-known mark to any product, to refill old bottles with a foreign substance and sell it under another man's label, mark, and reputation? All of these provisions are made to prevent fraud on manufacturers who, by their skill and care, have established a reputation for their goods, and to prevent fraud on the customer who buys on the credit of the trade-mark and label. * * * If the Legislature has the power, which the appellant concedes, to forbid trade-marked packages from being filled with goods not made by the owner of the marks and sold under the representation that they are that manufacturer's product, why has it not the power, in order to secure that end, to prevent the knowingly selling of goods represented to be the manufacture of any person other than himself, unless such goods are contained in the original packages and under the marks placed thereon by the manufacturer entitled to use such marks?"

And the Court of Appeals (195 N. Y. at page 381, 89 N. E. at page 172, 25 L. R. A. [N. S.] 473) says:

"The main question discussed by counsel is whether the statute, as thus construed, violates either the state or the federal Constitution. The object of the statute is to prevent fraud, affecting both the public and the owners of trade-marks, by prohibiting the sale of goods from an original package labeled with a trade-mark, upon the representation that such goods were placed in that package by the owner of that label. The enactment of statutes to prevent fraud is a proper exercise of the police power of the state, which is under the control of the Legislature. The power to pass laws upon the subject necessarily carries with it the choice of methods to make the legislation effective. The right is not without limitation, for it must be so exercised as not to deprive a citizen of life, liberty, or property without due process of law, or to deny to any person the equal protection of the laws. A reasonable regulation to protect the rights of all, however, does not deprive any one of his property simply because it interferes with the use thereof to the extent necessary to protect the public from fraudulent practices. Legislation which interferes only to a reasonable extent with the enjoyment of property, in order to promote the general welfare and which in fact tends to promote the general welfare, violates neither Constitution."

[4] It is quite true that in this case the defendants sold the contents of the tank as Searchlight gas, but the intention or the motive is of no consequence so long as the act itself constitutes the offense. See Appellate Division opinion in the Luhrs Case, 127 App. Div. at page 637, 111 N. Y. Supp. at page 751.

[5] It is no excuse to maintain that the legend etched upon the tank was covered by the label stating that the contents were Searchlight gas and not Prest-O-Lite gas. It stands to reason that a label pasted upon a copper plated steel receptacle can be easily removed. To permit a subterfuge of that kind would defeat the object of the statute. The enactment of the penal statute was due to the desire of the Legislature to prevent fraud (see above extracts from the Luhrs Case), and the intention of section 367 of the General Business Law is, as therein stated, "to protect the owner of trade-marks and labels against imitation and refilling of all packages and receptacles while bearing such trade-mark." These statutes would become valueless if they could be avoided by the device employed herein of pasting a label over the trade-mark without obliterating it. No matter how honest the Searchlight Company or these defendants may have been, they employed means whereby a dishonest purchaser, by the simple process of removing the label, would be enabled to practice that fraud which the statute attempted to prevent.

If, as I believe, section 2354 of the Penal Law applies to the sale under consideration, then the defendants were guilty of a crime, and consequently it is entirely immaterial whether the Searchlight Gas Company or these defendants acquired the tank in question before or after the completion of the publication of plaintiff's trade-mark.

Judgment is directed for the plaintiff for the sum of $100.